Filed 4/25/13  Green v. Johnson CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KEVIN GREEN et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>PAUL D. JOHNSON,<br><br>    Defendant and Appellant. | 2d Civil No. B239546<br>(Super. Ct. No. 56-2008-00330015-CU-BT-SIM)<br>(Ventura County) |

Investors in trust deeds sued the broker who arranged the loans when the loans went into default.  The trial court found the broker liable for negligent misrepresentation and breach of fiduciary duty, and awarded damages measured by the benefit of the bargain.  The trial court also found the broker violated numerous provisions of the Business and Professions Code, and awarded restitution of commissions and fees.

On appeal, the broker contends the judgment for negligent misrepresentation and breach of fiduciary duty is not supported by substantial evidence.  The investors have declined to submit a respondents' brief.  We remand for a redetermination of damages.  In all other respects we affirm.

FACTS

Paul D. Johnson is a licensed real estate broker.  He is married to Sheila Newman, an attorney.

Johnson's business included selling fractionalized interests in notes and deeds of trust. The loans were for the construction and rehabilitation of single family residences.

Kevin and Susan Green met Johnson in 2002. They were referred to Johnson by Kevin's father. Kevin's father had invested with Johnson and had been satisfied with the investments. Although susan Green was a licensed real estate agent, she had limited experience. Neither of the Greens had any experience with fractionalized interests in trust deeds.

The Greens invested in a number of loans brokered by Johnson. Three of the loans developed problems.

*Sand Quill Loan*

Johnson arranged for a construction loan for a project on San Quill Street in Salton City, California. Johnson invited the Greens to participate in funding the loan. The Greens agreed to fund $50,000 of the $140,000 loan. The loan was to bear interest at a rate of 14 percent and be due within a year. They deposited $47,666.67 into escrow. The difference was prepaid interest.

Johnson prepared a disclosure statement on his own form. The form was not prepared or approved by the California Department of Real Estate. According to the disclosure statement, the lenders included the Greens and Johnson's wife, Newman. Johnson estimated the value of the property upon completion would be $200,000. Johnson did not provide an independent appraisal.

Johnson received a commission of four percent plus $1,200 in fees. Part of the fees was for Johnson to monitor construction and authorize distributions to the borrower. Johnson was not qualified to authorize the distribution of funds. (Bus. & Prof. Code, § 10238, subd. (h)(4)(D).)

Johnson recorded the trust deed without having funded Newman's portion of the loan. Recording the trust deed without the loan being fully funded violated Business and Professions Code section 10238, subdivision (h)(4)(B).

2

Johnson distributed the funds from escrow, but the project was never completed. The manufactured home placed on the property was heavily vandalized. The property was worth less than $50,000.

*Hopland Loan*

Johnson arranged for a construction loan for a single family residence on Hopland Street in Victorville. Johnson wanted the Greens to invest in the loan. The disclosure statement showed that Johnson and his wife would participate in funding the $285,000 loan. The term of the loan was one year and bore interest at four percent. Johnson recorded the trust deed, but neither he nor his wife funded their portion of the loan.

After the trust deed was recorded, the Greens paid $85,000 for a 29 percent interest in the loan. The Greens received their interest by an assignment of a part of the Johnsons' interest in the loan. The Johnsons assigned the balance of their interest in the loan to a third party.

Johnson paid out almost all of the loan proceeds to the developer in progress payments, including a draw for cabinets. In fact, the only construction that took place on the premises were wooden frames for concrete foundation footings. The developer never even obtained a building permit. Only $4,250 remained in the escrow account. Johnson took that money for himself without the consent of the Greens or other lenders.

*Grove Avenue*

Johnson arranged a construction loan for a single family residence on Grove Avenue in California city. The loan was for $185,000. It accrued interest at 14 percent and had a term of one year.

The disclosure statement identified the Johnsons as among the lenders. When Johnson recorded the trust deed, the Johnsons' portion of the loan was not funded. Thereafter, Johnson assigned a portion of their interest to the Greens for $63,000. Johnson assigned another portion of their interest to a third party. Newman invested $12,000.

Johnson distributed the funds to the developer, but the project was only 85 percent complete when the work stopped. The current value of the property in its uncompleted condition is $50,000.

Susan Green testified that she managed all the investments with Johnson on behalf of herself and her husband. She said when she saw Johnson's or Newman's name on the disclosure statements it made her "feel comfortable" about investing. It indicated that Johnson "thought it was a good project and that he was going to be involved with it." Johnson did not explain to her that "he took an unfunded position in any of these loans."

The trial court found: "The evidence establishes that, after assuring Ms. Green that he 'tries to invest' in the loan packages he brokers, Johnson negotiated, executed and delivered to the Greens assignments of deeds of trust which implied that Johnson and/or Newman had invested $85,000 of their own money in Hopland . . ., and $105,000 of their own money in Grove . . . . In addition, the lender disclosure statements prepared by Johnson for each of the three loans reflected some level of investment by Johnson and/or Newman. This created the appearance that Johnson, with his superior knowledge and experience in these investments, found these loans to be attractive investments. The Greens trusted in and relied upon Johnson's guidance. The true facts were that neither Johnson nor Newman had any money invested in San Quill or Hopland and never had more that [*sic*] $12,000 invested in Grove. The Greens were mislead [*sic*] by this false implication and, in part relying upon the sense of security it created, entered into these three transactions."

The trial court also found, however, that Johnson's misrepresentations were negligent and not intentional. The trial court based its judgment on negligent misrepresentation and constructive fraud arising from breach of fiduciary duty.

The court determined that the measure of damages for breach of fiduciary duty is benefit of the bargain. The trial court calculated damages as the Greens' principal investment totaling $198,000; plus 14 percent interest for a period of a year totaling $27,720, for a sum of $225,720. From that sum, the court deducted $1,166.66 for interest payments received from the Sand Quill developer, and $17,025 representing the Greens'

4

portion of the residual value of the Grove property, for a total judgment of $207,528.34, plus prejudgment interest on the amounts invested from the dates of the investments.

The court also found that Johnson committed numerous violations of the Business and Professions Code. The court ordered restitution of commissions and fees paid in the amount of $10,262.31.

DISCUSSION

I.

Johnson contends there is no substantial evidence to support the trial court's finding that the Greens formed the mistaken belief that the Johnsons funded a substantial portion of the Grove and Hopland loans.

In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 376, p. 434.) *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

Here Johnson assured Susan Green that he "tries to invest" in the loans he brokers. Disclosure statements for the loans list the Johnsons as among the lenders. Susan Green testified that Johnson did not explain to her that he took an unfunded position in any of the loans. That is more than sufficient evidence to support the trial court's conclusion that the Greens were misled into believing that the Johnsons funded a substantial portion of the loans.

Johnson points to his testimony that he informed "all of his lenders" that the loan was "phase funded" and explained the mechanism for phase funding. But we presume the trial court did not find Johnson's testimony credible. (*GHK Associates v. Mayer Group, Inc.*, *supra*, 224 Cal.App.3d at p. 872.) That another lender testified

5

Johnson so informed him, does not mean Susan Green was informed, or that the court must find the testimony credible.

Johnson argues the trial court found he did not intentionally misled the Greens. But the argument misses the point. The trial court found that the Greens were in fact misled.

Johnson points out that the Greens received a disclosure statement for the Grove loan prior to making an investment. The disclosure statement points out that at that point in time it had a funded six percent ($12,000) position in the Grove loan. But the trial court found that the Johnsons did not place the $12,000 or any money into escrow until after the Greens invested. In any event, Johnson points to nothing in the disclosure statement that would have informed the Greens the Johnsons' position would not be fully funded by the time the trust deed was recorded.

## II.

Johnson contends there is no substantial evidence that he is liable based on negligent misrepresentation, professional negligence or breach of fiduciary duty.

Johnson relies on *Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298. There, buyers of a home sued seller's real estate broker for failing to disclose that the home had foundation problems. The court upheld a nonsuit on the buyers' cause of action for negligent misrepresentation. The court stated that negligent representation requires a "'positive assertion'" or "'assertion' of fact." (*Id.* at p. 306.) An "'implied'" assertion or representation is not enough. (*Ibid.*) Johnson points out the trial court found that he never expressly represented to the Greens his positions in the trust deeds were fully funded.

But in *Wilson* the broker made no representation at all about the foundation. Here Johnson provided the Greens with disclosure statements naming specific persons, including Johnson and his wife, who would be lenders on the loans. That qualifies as a positive assertion that the loans would be fully funded and the Johnsons would participate. It is the only reasonable conclusion that the Greens could deduce from the disclosure statements.

6

Negligent misrepresentation also requires that the defendant intend the plaintiff rely on the representation. (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 818, p. 1181.) Here, the trial court found that Johnson did not intend for the Greens to infer the positions stated in the documents were funded.

It may well be that Johnson did not subjectively intend the Greens to rely on his representations. But Johnson provided the Greens with disclosure statements that would lead any reasonable person to believe the loans would be fully funded. Johnson will not be heard to say he did not intend the Greens to rely on the disclosure statements.

In any event, the trial court did not base its judgment on negligent misrepresentation alone. It also based its judgment on "constructive fraud" arising from a breach of fiduciary duty.

"'[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another *even though the conduct is not otherwise fraudulent*. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement may constitute constructive fraud *even though there is no fraudulent intent*.'" (*Salahutdin v. Valley of California, Inc*, (1994) 24 Cal.App.4th 555, 565-568, quoting 2 Miller & Starr (2d ed. 1989) Agency, § 3:20 at pp. 120-121.)

Here the trial court could reasonably conclude that Johnson breached his fiduciary duty by not fully disclosing the extent of Newman's and Johnson's participation in the loans and that the loans would not be fully funded.

Johnson argues, however, that the Greens must prove causation under the "'but for'" test. (Citing *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1240.) Here Susan Green testified that when she saw Johnson's or Newman's name on the loans she felt "very comfortable" and that it meant "[Johnson] thought it was a good project . . . ." But Johnson points out neither of the Greens testified that but for seeing Johnson's or

7

Newman's name they would not have invested. Thus, Johnson argues, there was insufficient evidence of causation.

But Johnson points to no authority that would require the Greens to expressly testify that "but for" seeing Johnson's or Newman's name they would not have invested. Instead, the trial court as the trier of fact can draw reasonable inferences from the evidence. We are bound by such inferences on appeal even if other inferences are also reasonable. (9 Witkin, Cal. Procedure, *supra*, Appeal, § 376, 434.) Here the trial court could reasonably conclude from Susan Green's testimony that but for seeing Newman's or Johnson's name as lenders the Greens would not have invested.

III.

Johnson contends the trial court erred in awarding damages based on the "benefit-of-the-bargain"; that is, what the Greens would have received had their investments been successful.

Johnson argues, without citation to authority, that the proper measure of damages is the Greens' "out-of-pocket" loss.

In determining that the benefit-of-the-bargain is the proper measure of damages for a breach of fiduciary duty, the trial court relied on *Salahutdin v. Valley of California, Inc*, *supra*, 24 Cal.App.4th at pp. 565-568. Our Supreme Court, however, in *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1249, recognized the holding in *Salahutdin* but stated: "We have previously held that plaintiff is only entitled to its actual or 'out-of-pocket' losses suffered because of fiduciary's negligent misrepresentation . . . . [Citations.]" We take that to mean the proper measure of damages is out-of-pocket loss, at least where the misrepresentation is not intentional.

Moreover, out-of-pocket loss is the most reasonable measure. Presumably, had the Greens known the truth, they would not have invested. Thus, they are not entitled to the benefit the investment was supposed to have provided. We must remand for a determination of damages based on the Greens' out-of-pocket loss.

The matter is reversed and remanded for a determination of damages based on the Greens' out-of-pocket loss. In all other respects the judgment is affirmed. Appellant shall bear his own costs.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.


9

Mark S. Borrell, Judge

Superior Court County of Ventura
_____


Terran T. Steinhart for Defendant and Appellant.

No appearance for Plaintiffs and Respondents.