IN THE SUPREME COURT OF THE STATE OF NEVADA

JOHN ILIESCU, JR., INDIVIDUALLY,
AND JOHN ILIESCU, JR. AND
SONNIA ILIESCU AS TRUSTEES OF
THE JOHN ILIESCU, JR. AND SONNIA
ILIESCU 1992 FAMILY TRUST
AGREEMENT,
Appellants,
vs.
HALE LANE PEEK DENNISON AND
HOWARD PROFESSIONAL
CORPORATION, D/B/A HALE LANE,
Respondent.

No. 76146

FILED

JAN 23 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order granting summary judgment in a legal malpractice action. Second Judicial District Court, Washoe County; Elliott A. Sattler, Judge.

This action stems from a failed real estate transaction initiated in 2005.[1] Appellants, John Iliescu, Jr., et al., (collectively, Iliescu) retained respondent law firm Hale Lane Peek Dennison and Howard (Hale Lane) in an attempted sale of Iliescu's undeveloped property in downtown Reno. The would-be purchaser, who planned to develop a high-rise condominium project on the property, contracted with an architectural firm to perform off-site design services for the planned development. Hale Lane represented both Iliescu and the would-be purchaser. After the would-be purchaser

---

[1] We recounted in greater detail the underlying facts surrounding the proposed transaction in *Iliescu v. Steppan*, 133 Nev. 182, 183-85, 394 P.3d 930, 932-33 (2017). Here, we need only recite the facts relevant to this case.

20-03160

failed to obtain financing and the proposed sale fell through, architect Mark Steppan filed a $1.8 million mechanic's lien against Iliescu's property for unpaid fees. Hale Lane attempted to expunge the mechanic's lien, arguing that it was filed without statutorily required notice, and that a legal exception excusing strict compliance with pre-lien notice requirements[2] did not apply. The district court rejected Hale Lane's attempt to expunge the lien and ordered further discovery in the action to foreclose the mechanic's lien.

Iliescu replaced Hale Lane with new counsel and moved forward with the litigation challenging the mechanic's lien. Iliescu also filed a third-party complaint against Hale Lane for professional malpractice and negligence, alleging Hale Lane negligently executed the failed transaction, specifically in failing to advise Iliescu to protect against a mechanic's lien by filing a notice of non-responsibility, and subsequently failing to expunge the mechanic's lien. The mechanic's lien suit proceeded while the professional negligence action against Hale Lane was stayed.

After this court decided *Iliescu v. Steppan*, 133 Nev. 182, 394 P.3d 930 (2017), in favor of Iliescu, invalidating the mechanic's lien and holding that the *Fondren* exception did not apply to offsite design services, Hale Lane moved for summary judgment in the professional negligence action. Hale Lane argued that its original attempt to expunge the lien should have succeeded, and that this court's decision in *Iliescu v. Steppan* validated its earlier argument, which the district court rejected. The

---

[2]Under our holding in *Fondren v. K/L Complex Ltd.*, 106 Nev. 705, 710, 800 P.2d 719, 721-22 (1990), a lien claimant may be excused from strictly complying with statutory pre-lien notice requirements where a property owner has actual notice of the work the lien claimant performed and for which the lien is filed (the *Fondren* exception).

district court agreed with Hale Lane and determined that, despite any purported negligence on Hale Lane's part, once the district court erroneously rejected Hale Lane's legal argument, there was no causal connection between any alleged transactional negligence and Iliescu's litigation damages. The district court also rejected Iliescu's NRCP 15(a) motion to amend his pleadings, and Iliescu's NRCP 56(f) motion for more time to complete discovery and to secure an expert witness to establish the appropriate standard of care. Iliescu now appeals.

## DISCUSSION

Iliescu challenges the district court's order granting summary judgment for Hale Lane. The district court determined summary judgment was appropriate in light of Iliescu's failure to establish the proximate causation element of his legal malpractice action. We review a district court's decision to grant summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate where, viewed in a light most favorable to the nonmoving party, the pleadings and all other evidence on file demonstrate no genuine issue of material fact exists and the moving party is entitled to summary judgment as a matter of law. *Id.*

To succeed on his legal malpractice claims against Hale Lane, Iliescu must establish: (1) the existence of an attorney-client relationship; (2) a duty owed to Iliescu to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity possess; (3) a breach of such duty; (4) that the breach proximately caused damages to Iliescu; and (5) actual loss or damages. *Day v. Zubel*, 112 Nev. 972, 976, 922 P.2d 536, 538 (1996). The district court granted summary judgment for Hale Lane solely on the issue of causation, concluding that the district court's prior judicial error

SUPREME COURT
OF
NEVADA

(O) 1947A

3

"sever[ed] the causal connection between the alleged legal malpractice and Iliescu's claimed damages." We need only address the causation issue here.

*Proximate causation in legal malpractice actions*

Iliescu alleges that Hale Lane committed professional malpractice by negligently representing Iliescu during the failed real estate transaction, and during subsequent litigation to expunge the mechanic's lien. Iliescu argues that Nevada treats litigation malpractice and transactional malpractice differently for purposes of establishing proximate causation. Specifically, Iliescu argues that Hale Lane could have taken various preventive measures during the failed real estate transaction to protect against the risk of a mechanic's lien, and that Hale Lane's alleged transactional negligence should be subject to a substantial factor test for causation, rather than the but-for test. We are not persuaded that different standards for proximate causation control in this case.

To satisfy the causation element, Iliescu must prove that "but for" Hale Lane's negligence, Iliescu would have achieved a better result in the underlying action. *Orrick Herrington & Sutcliffe LLP v. Superior Court*, 132 Cal. Rptr. 2d 658, 661 (Ct. App. 2003). It is not enough to show that the attorney "might have erred, exposing [the plaintiff] to possible future claims." *Id.* at 662. Instead, in both litigation and transactional malpractice cases, the plaintiff must prove that "but for" the alleged malpractice, "the harm or loss would not have occurred." *Viner v. Sweet*, 70 P.3d 1046, 1048 (Cal. 2003). The "but for" standard prevents "damages based on pure speculation and conjecture." *Orrick Herrington & Sutcliffe LLP*, 132 Cal. Rptr.2d at 661.

While litigation malpractice and transactional or non-adversarial malpractice are treated differently for purposes of tolling the

statute of limitations in an attorney negligence action, *Moon v. McDonald, Carano & Wilson LLP*, 129 Nev. 547, 551-52, 306 P.3d 406, 409-10 (2013), courts do not distinguish transactional and litigation malpractice for purposes of determining proximate cause. *Frederick v. Wallerich*, 907 N.W.2d 167, 173 (Minn. 2018) ("When the [legal malpractice] case involves a transactional matter . . . it turns on whether the attorney's conduct was the but-for cause of the failure to obtain *a more favorable result* rather than success or failure in litigation."); *see also Viner*, 70 P.3d at 1048 (explaining that when alleged attorney malpractice occurs in the performance of transactional work, the plaintiff must prove that the harm or loss would not have occurred without the attorney's malpractice).

> As the California Supreme Court observed in *Viner*, there is
>
> nothing distinctive about transactional malpractice that would justify a relaxation of, or departure from, the well-established requirement in negligence cases that the plaintiff establish causation by showing either: (1) *but for* the negligence, the harm would not have occurred, or (2) the negligence was a concurrent independent cause of the harm.

*Viner*, 70 P.3d at 1051. Concurrent independent causes are "multiple forces operating at the same time *and independently*, each of which would have been sufficient by itself to bring about the harm." *Id.* at 1051 (emphasis added). A substantial factor test, rather than the "but for" test, controls under a concurrent independent causation analysis. *Id.*

This case does not implicate a concurrent independent cause. Hale Lane's purportedly negligent failure to warn or protect against a mechanic's lien was not sufficient, by itself, to bring about the filing of the mechanic's lien. The developer's hiring of the architect who filed the lien, the architect's performance of offsite design services, and the developer's

SUPREME COURT
OF
NEVADA

(O) 1947A

default and subsequent failure to compensate the architect for his work, also had to occur in order for the lien to be filed and for Hale Lane's alleged transactional negligence to be actionable. These multiple forces necessarily depended on one another, and were insufficient of themselves, to bring about the filing of the lien. Accordingly, no concurrent independent cause is implicated here, and Iliescu must instead establish that, but for Hale Lane's alleged transactional negligence, a mechanic's lien would not have been filed. *See Gibbons v. Ludlow*, 304 P.3d 239, 245 (Colo. 2013) ("In [legal malpractice] cases involving an alleged unfavorable transaction, a plaintiff must show that he would have obtained a more favorable result in the underlying transaction but for the professional's negligence."); George S. Mahaffey, Jr., *Cause-in-Fact and the Plaintiff's Burden of Proof with Regard to Causation and Damages in Transactional Legal Malpractice Matters: The Necessity of Demonstrating the Better Deal*, 37 Suffolk U.L Rev. 393, 396-97 (2004) (Explaining that the "'but-for' test and the 'case-within-a-case' approach . . . are the most consistent methods to analyze the legal malpractice (*both litigation and transactional*) causes of action." (Emphasis added)).

*Hale Lane's alleged transactional malpractice*

Iliescu has not raised any genuine issue of material fact by simply alleging various steps Hale Lane should have taken to protect Iliescu from the filing of a mechanic's lien. Iliescu's transactional malpractice claim cannot survive under the but-for causation test as a matter of law.

Iliescu first alleged that Hale Lane failed to advise him to record a notice of non-responsibility to protect against the filing of a mechanic's lien. This court ultimately determined, however, that Iliescu could not file such a notice because he was not a disinterested owner, having

SUPREME COURT
OF
NEVADA

(O) 1947A

6

indirectly caused the off-site architectural work to be performed pursuant to a purchase contract. *Iliescu v. Steppan*, 133 Nev. 182, 188-89, 394 P.3d 930, 935 (2017). Because he was not a disinterested owner, and "the agreement was contingent upon completion of the purchase of the property, Iliescu was unable to give a notice of non-responsibility to protect . . . from mechanics' liens for offsite architectural work." *Id.* at 189, 394 P.3d at 935. Hale Lane's failure to advise Iliescu to take an action he could not legally take could not have caused the mechanic's lien to be filed.

For his part, Iliescu acknowledges that the holding in *Iliescu v. Steppan* vitiates his argument that Hale Lane should have advised him to record a notice of non-responsibility. In light of the *Iliescu v. Steppan* decision, Iliescu attempted to amend his complaint, alleging other steps Hale Lane should have taken to protect Iliescu. It is far from certain that these other proposed measures would have been valid under Nevada's mechanic's lien statutes. For example, Iliescu argues that Hale Lane could have required a lien release as an ongoing condition to the seller's obligations under the purchase agreement, and that failing to condition escrow extensions on a lien release constituted professional malpractice. Asserting that Hale Lane should have conditioned the purchase agreement on a lien release ignores that, generally, "conditions, stipulations, or provisions in a contract that require a lien claimant to waive lien rights" are void. *Hardy Cos., Inc. v. SNMARK, LLC*, 126 Nev. 528, 539, 245 P.3d 1149, 1156 (2010).

In any event, Iliescu has not shown that the mechanic's lien was filed *only* because of Hale Lane's alleged transactional negligence. Even if Hale Lane had proposed certain transactional conditions, *i.e.*, requiring a surety bond for the payment of architectural fees, or establishing a

SUPREME COURT
OF
NEVADA

(O) 1947A

construction control account to ensure payment of design professionals, there is nothing in the record to indicate the would-be developer would have agreed to such terms. *See* 3 Ronald E. Mallen, *Legal Malpractice* § 24.5 (2019 ed. & Jan. 2019 update) ("If the alleged error is the failure to obtain or advise of a provision, concession or benefit, the client must prove that the other party would have agreed."). Furthermore, had Hale Lane required a lien release waiver or surety bond as part of the transaction, such measures would not have guaranteed that, when the developer failed to pay the architect, the architect would not file a mechanic's lien or initiate a suit to foreclose the mechanic's lien. *See generally Simmons Self-Storage v. Rib Roof, Inc.*, 130 Nev. 540, 545, 331 P.3d 850, 853 (2014) (steel manufacturer and supplier brought a lien foreclosure action against six properties it had supplied steel to, despite execution of lien release forms and the posting of surety bonds); *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1115-17, 197 P.3d 1032, 1040-42 (2008) (unpaid subcontractor prevailed in a lien foreclosure action, despite the existence of a lien waiver provision in the subcontract, where the lien waiver provision violated Nevada's public policy favoring securing payment for labor and material contractors).

Simply put, Iliescu has not raised a genuine issue of fact demonstrating that Hale Lane could have done anything to prevent the would-be purchaser from defaulting and failing to compensate the architectural firm for its work, or that Hale Lane could have prevented the filing of a legally unfounded lien. Had all of the proposed preventive measures been taken, Steppan would still not have been prevented from filing an invalid lien, and Hale Lane still would have had to defend against it in court. Iliescu's claim, therefore, fails the proximate cause test because

Iliescu cannot prove that, but for Hale Lane's alleged transactional negligence, the mechanic's lien would not have been filed.

*Hale Lane's alleged litigation malpractice*

Iliescu also alleges that, after the mechanic's lien was filed, Hale Lane negligently failed to sufficiently challenge the legal deficiencies invalidating the lien. Iliescu specifically alleges that Hale Lane erroneously invited the district court to order discovery in the underlying mechanic's lien litigation, by focusing the court's attention on a fact issue of whether or not Iliescu had sufficient actual knowledge of the off-site work that predicated the filing of the lien. Iliescu argues that Hale Lane should have treated the fact question of actual knowledge as legally insignificant, and instead should have argued as a matter of law that Iliescu's knowledge was irrelevant because the design services were performed off-site. We conclude this argument is unavailing and that Iliescu has failed to raise a genuine fact issue sufficient to overcome summary judgment.

It is difficult to grasp how Hale Lane could have made an onsite/offsite legal distinction in its 2007 litigation to expunge the mechanic's lien, given the state of the law at that time. We noted in *Iliescu v. Steppan* that it was not until this court's decision in *Hardy Companies, Inc. v. SNMARK, LLC*, 126 Nev. 528, 245 P.3d 1149 (2010), that the *Fondren* actual notice exception was clarified to apply only where the property owner "has actual notice of the construction *on his property*." 133 Nev. 182, 185, 394 P.3d 930, 933 (2017) (emphasis added). In *Iliescu*, we stated that the legal question whether the *Fondren* exception applied to offsite design work had not yet been addressed: "[W]e have not previously addressed whether the actual notice exception applies to offsite work and services performed by an architect hired by a prospective buyer when no

onsite work has been performed on the property." *Id.* at 186-87, 394 P.3d at 934. Thus, it was entirely reasonable for Hale Lane not to raise an onsite/offsite distinction more than a decade before we resolved that question in *Iliescu v. Steppan.*

The fact that Iliescu's replacement counsel largely reiterated Hale Lane's initial argument that Iliescu lacked actual knowledge underscores the unsettled state of the law when Hale Lane challenged the lien in 2007. The record demonstrates that between 2008 and 2009, Iliescu's replacement counsel explicitly argued: "As this [c]ourt previously recognized, 'the issue presented [in this case] is simply whether or not the applicants had actual knowledge that [Steppan and his firm] were performing architectural services for the benefit of the real property which is the subject of the land purchase agreement." This argument mirrors what Hale Lane originally argued in 2007, that is, that the mechanic's lien was legally invalid because Iliescu's lack of actual knowledge precluded the application of the *Fondren* exception. Yet, Iliescu now contends that Hale Lane was somehow negligent for raising this precise point, and that Hale Lane should, instead, have argued that any question of fact as to Iliescu's knowledge was "legally unimportant and irrelevant." Iliescu's claim is undermined by the fact that his own replacement counsel took the same approach Hale Lane took in challenging the lien.

Iliescu claims that his replacement counsel eventually made the "winning argument" that the *Fondren* exception did not apply to offsite design services as a matter of law. Our review of the record indicates Iliescu's replacement counsel made this argument as part of its fact-based contention that Iliescu lacked actual knowledge of the offsite design services, and only raised the issue *after* this court's 2010 *Hardy* decision.

However, accepting Iliescu's assertion as true, as we must in reviewing an order for summary judgment, Iliescu's litigation malpractice claim still falls short because the record shows that, despite Iliescu's replacement counsel raising the "winning argument," the district court rejected the argument and ruled for Steppan anyway. After Iliescu's counsel filed summary judgment briefs distinguishing onsite and offsite services as a matter of law, the district court nevertheless rejected their argument and ruled in favor of Steppan. The district court's rejection of the onsite/offsite argument, which we reversed in *Iliescu v. Steppan*, further undermines Iliescu's litigation malpractice claim because it shows that even if Hale Lane had raised the argument from the start, there was no guarantee the court would have accepted it, and no guarantee that Iliescu would not need to litigate any further. Accordingly, Iliescu cannot show that but for Hale Lane's purported negligence in its initial application to expunge the mechanic's lien, Iliescu would have obtained a better result in the underlying action.

Hale Lane attempted to expunge the mechanic's lien in 2007, arguing that because the *Fondren* actual notice exception did not apply, the mechanic's lien was invalid. Hale Lane cited to *Schofield v. Copeland Lumber Yards, Inc.*, 101 Nev. 83, 85, 692 P.2d 519, 520 (1985), urging the district court to expunge the lien because the architect had failed to substantially comply with the pre-lien notice requirements. Hale Lane's argument was legally sound, given the state of the law at that time. We ultimately affirmed Hale Lane's argument in *Iliescu v. Steppan*, holding that "[b]ecause the actual notice exception does not apply and there is no dispute that Steppan did not otherwise provide Iliescu with the required pre-lien notice," the lien was invalid. 133 Nev. at 189, 394 P.3d at 936.

Assuming, *arguendo*, that some earlier transactional negligence on Hale Lane's part set in motion the litigation that ensued to expunge the mechanic's lien, once the district court erroneously rejected Hale Lane's argument, the court's error extinguished any causal connection between the purported earlier negligence and the damages incurred in litigating after the court's error. "Where an attorney has raised and preserved all relevant legal considerations in an appropriate procedural manner and a court nevertheless commits judicial error, the attorney's actions cannot be considered the proximate cause of the client's loss." *Crestwood Cove Apartments Bus. Tr. v. Turner*, 164 P.3d 1247, 1255 (Utah 2007); *see also Kiribati Seafood Co. v. Dechert LLP*, 83 N.E.3d 798, 806 (Mass. 2017) ("Where an attorney makes a reasonable and correct argument of law and loses because of judicial error that was not foreseeable, the attorney cannot be found negligent for failing to prevent or mitigate [the court's] error.").

As discussed, Iliescu's replacement counsel made substantially similar arguments as Hale Lane made in its 2007 challenge. This court clearly stated that it had not addressed the onsite/offsite distinction prior to the *Iliescu v. Steppan* decision in 2017. Hale Lane reasonably raised the appropriate legal argument, and the district court rejected it. Iliescu's replacement counsel made substantially the same argument to no avail. It was, therefore, judicial error, not any negligent representation on Hale Lane's part, that necessitated further litigation and this court's ultimate decision that the mechanic's lien was invalid, as Hale Lane originally contended. "[W]hen [legal] malpractice is alleged to have caused an adverse ruling in an underlying action . . . [a]pparent damage may vanish with successful prosecution of an appeal and ultimate vindication of an

attorney's conduct by an appellate court." *Hewitt v. Allen*, 118 Nev. 216, 221, 43 P.3d 345, 348 (2002) (third alteration in original) (internal quotation marks omitted). And "when an attorney has raised the appropriate arguments and the court nevertheless committed judicial error, a plaintiff's suit can be appropriately dismissed on summary judgment." *Crestwood Cove*, 164 P.3d at 1256. Accordingly, we conclude the district court correctly determined that summary judgment was warranted in favor of Hale Lane.

*The district court's denial of Iliescu's request for leave to amend*

NRCP 15(a) (2017)[3] provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." When a district court denies a motion to amend on the basis of futility, we review the district court's decision de novo. *Anderson v. Mandalay Corp.*, 131 Nev. 825, 832-33, 358 P.3d 242, 247-48 (2015). "[T]he liberal policy provided in Rule 15(a) does not mean the absence of all restraint. Were that the intention, leave of court would not be required. The requirement of judicial approval suggests that there are instances where leave should not be granted." *State, Univ. & Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 988, 103 P.3d 8, 18-19 (2004) (alteration in original) (internal quotation marks omitted).

---

[3]The Nevada Rules of Civil Procedure were amended effective March 1, 2019. *See In re Creating a Committee to Update and Revise the Nevada Rules of Civil Procedure*, ADKT 522 (Order Amending the Rules of Civil Procedure, the Rules of Appellate Procedure, and Nevada Electronic Filing and Conversion Rules, Dec. 31, 2018). This order applies the pre-amendment versions of NRCP 15(a) and NRCP 56(f), which were in effect during the district court proceedings in this case.

Here, the district court denied Iliescu's motion to amend, concluding the proposed amendment was futile as merely proffering various hypothetical steps Hale Lane could have taken to protect Iliescu from the possibility of a mechanic's lien being filed. As discussed, we conclude that Iliescu has not shown Hale Lane could have prevented the filing of a legally deficient lien. Hale Lane would have been forced to litigate to defeat any such lien, regardless of any preventive measures that had been taken. Given the state of the law in 2007, Hale Lane made a reasonable and legally sound argument that the district court erroneously rejected. No matter what Hale Lane could have done at the transaction phase, Hale Lane did not invite the district court's error which necessitated further litigation.

Accordingly, we affirm the district court's rejection of Iliescu's proposed amended complaint. The district court correctly concluded that Iliescu's attempt, with the benefit of more than ten years of hindsight, to allege various steps Hale Lane should have taken during the transaction, would have been futile. *See also* 1 Ronald E. Mallen, *Legal Malpractice* § 8:23 (2019 ed. & Jan. 2019 update) ("Hindsight frequently will show, however, that the other party's lawyer could have drafted, advised or acted differently to reduce the risk of an unfounded claim . . . . [I]n every underlying lawsuit there exists the potential that one party's lawyer will be liable for . . . failing to avoid an unfounded prosecution. The burden of such liability on the profession would be immense . . . Logic and public policy dictate that such an exposure should not be imposed on the profession since it would redound detrimentally to clients as well.").

*The district court's denial of Iliescu's request for more time to complete discovery*

NRCP 56(f) (2017) authorizes a court to "order a continuance to permit . . . discovery" if a party opposing a motion for summary judgment

SUPREME COURT
OF
NEVADA

(O) 1947A

14

"cannot for reasons stated present by affidavit facts essential to justify the party's opposition." The district court rejected Iliescu's NRCP 56(f) motion as futile, reasoning that the district court's prior error would "always constitute an intervening and superseding cause" of Iliescu's damages. "A district court's decision to refuse [an NRCP 56(f)] continuance is reviewed for abuse of discretion." *Aviation Ventures, Inc. v. Joan Morris, Inc.*, 121 Nev. 113, 118, 110 P.3d 59, 62 (2005). "[A] motion for a continuance under NRCP 56(f) is appropriate only when the movant expresses how further discovery will lead to the creation of a genuine issue of material fact." *Id.*

Iliescu failed to explain how additional time for discovery would have supported his argument that Hale Lane's professional negligence caused the mechanic's lien to be filed and prolonged litigation to ensue in the mechanic's lien foreclosure suit. The proximate causation element is the sole question addressed in the district court's order granting summary judgment. Iliescu's argument as to causation emphasized Hale Lane's knowledge of the architectural contract and the steps Hale Lane should have taken based on that knowledge. Iliescu's subsequent NRCP 56(f) motion, however, has nothing to do with the causation issue; it expressed a need to establish by expert testimony a standard of care Hale Lane allegedly should have satisfied in representing Iliescu while simultaneously representing the would-be purchaser. Iliescu sought to obtain an expert witness on the breach-of-duty element: "[A]n expert witness [will] provide expert testimony with respect to breach of the applicable standard of care in this legal malpractice matter." Hale Lane, however, effectively conceded the breach element of the legal malpractice claim, arguing that Iliescu could not establish causation. It was Iliescu's failure to meet the causation element alone that formed the basis of the district court's order granting

summary judgment. Iliescu's expert testimony as to the breach element would have been futile in this instance, providing evidence on a point that was not at issue and that did not inform the district court's order granting summary judgment. The district court, thus, did not abuse its discretion in denying Iliescu's NRCP 56(f) motion. In light of the foregoing, we

ORDER the judgment of the district court AFFIRMED.[4]

_Pickering_, C.J.
Pickering

_Gibbons_, J.
Gibbons

_Parraguirre_, J.
Parraguirre

cc:    Hon. Elliott A. Sattler, District Judge
Janet L. Chubb, Settlement Judge
Albright Stoddard Warnick & Albright
Lemons, Grundy & Eisenberg
Washoe District Court Clerk

---

[4]The Honorable Elissa Cadish, Justice, voluntarily recused herself from participation in the decision of this matter.