Filed 7/11/14  Mauctrst, LLC v. Traux CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

|  |  |
|---|---|
| MAUCTRST, LLC, et al., | C069486 |
| Plaintiffs and Appellants, | (Super. Ct. No. 39-2010-00253617-CU-PN-STK) |
| v. |  |
| DANIEL TRAUX et al., |  |
| Defendants and Respondents. |  |

Plaintiffs Richard C. Sinclair (Sinclair),[1] Brandon Sinclair (Brandon), Gregory Mauchley, Mauctrst, LLC (Mauctrst), Capstone, LLC, and Lairtrust, LLC (Lairtrust) sued their former attorneys Daniel Truax and Lisa Blanco Jimenez and the law firm Neumiller & Beardslee (sometimes collectively referred to herein as Neumiller) for <u>professional</u> malpractice arising from Neumiller's representation of plaintiffs in an underlying real estate action.  In the real estate action the trial court found against plaintiffs on their

---

[1] Sinclair also serves as counsel for the plaintiffs in this action, both in the trial court and on appeal.

1

complaint and concluded plaintiffs' unclean hands barred their recovery as well. In this action Neumiller demurred to plaintiffs' first amended complaint on the ground that the malpractice claims asserted therein are barred by collateral estoppel to the extent the judgment in the prior action relates to the alleged mishandling of the real estate action. The trial court sustained the demurrer without leave to amend (Code of Civ. Proc., § 430.10, subd. (e)),[2] and judgment was entered in favor of Neumiller and against plaintiffs.

We shall dismiss the appeal as to plaintiffs Lairtrust and Mauctrst because Lairtrust's powers, rights, and privileges have been suspended, and Mauctrst's have been cancelled. We shall reverse the judgment as to the remaining plaintiffs because the doctrine of collateral estoppel does not apply for the reason the malpractice claim of mishandling the real estate action alleged in plaintiffs' first amended complaint was not actually litigated or necessarily decided in the prior real estate action.

FACTUAL AND PROCEDURAL BACKGROUND[3]

A.    *The Litigation Underlying Plaintiffs' Instant Legal Malpractice Action*

In 2003, plaintiffs Sinclair, Lairtrust, Brandon, Capstone, LLC, and Mauchley sued Andrew Katakis, his company California Equity Management Group, Inc. (CEMG) (collectively referred to herein as Katakis), and the Fox Hollow of Turlock Owners Association (FHOA) in Stanislaus County Superior Court case No. 332233 (the Fox

---

[2] Further undesignated statutory references are to the Code of Civil Procedure.

[3] "Because this appeal arises in connection with a demurrer, we look to the 'properly pleaded factual allegations' of the operative complaint 'read in light of' any 'judicially noticeable facts' and 'factual concessions' of the plaintiff." (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 506, fn. 1.)

2

Hollow litigation). (*Sinclair v. Katakis* (Jan. 23, 2013, F058822) [nonpub. opn.].)[4] The Fox Hollow litigation involved the ownership of eight lots in the Fox Hollow subdivision. Katakis acquired properties plaintiffs had lost through foreclosures; plaintiffs sued Katakis claiming they were deprived of the properties through wrongful foreclosures and Katakis's tortious acts. Katakis denied the allegations and asserted that plaintiffs' unclean hands precluded recovery.

On July 5, 2007, the date set for trial, the parties discussed settlement and executed a document entitled "Preliminary Settlement Terms of Settlement Agreement for State of California Superior Court Case Number 332233, and all other actions between the parties . . . ." The agreement provided "[t]hese terms are skeletal, with the final details to be provided by the parties through mutual constructive engagement. Nevertheless, these are the material terms of the agreement, with all parties using their best efforts to accomplish the goals of this Agreement." The agreement further provided: "This settlement agreement will be subject to supervision of the State of California Superior Court, until its completion, and the parties may enforce this agreement under the terms of California Code of Civil Procedure [section] 664.6."[5] Under the agreement, plaintiffs were to receive eight duplexes, valued at approximately $3.5 million, and, in

---

[4] Defendants' unopposed March 21, 2013, request for judicial notice of the Fifth Appellate District's unpublished opinion in *Sinclair v. Katakis, supra,* F058822, the proceeding underlying plaintiffs' instant legal malpractice action, is granted. (Evid. Code, § 452, subd. (d).) We incorporate some of the background from that decision here.

[5] Section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

turn, were to transfer several garage lots to Katakis and pay Katakis approximately $1 million.

On July 6, 2007, Neumiller, along with Katakis's counsel, advised the trial court " 'that the matter had been settled,' " and the trial was vacated.

On July 12, 2007, Katakis, through counsel, filed a notice of settlement in a related federal action pending in the United States District Court, Eastern District of California. Katakis advised the district court that "the parties hereto have entered into a global settlement of all matters now pending between them in this court . . . or that are pending in any other court."

Over the next five months, the parties were unable to work out the final details of the agreement, and after retaining new counsel, Katakis "refused to perform saying that there was never a meeting of the minds."

In January 2008, at plaintiffs' insistence, Neumiller filed a motion to enforce the agreement pursuant to section 664.6. Katakis opposed the motion, arguing the agreement was not enforceable because, among other things, the parties had failed to agree on several material terms. The trial court determined the agreement was not enforceable "because there was no meeting of the minds . . . ."

Thereafter, the matter was tried to the court, which "found against plaintiffs on their complaint and concluded plaintiffs' unclean hands barred their recovery as well." Plaintiffs appealed to the Fifth Appellate District, which affirmed the judgment.[6]

---

[6] Plaintiffs' January 31, 2013, request for judicial notice is denied for failure to comply with Evidence Code section 459 and California Rules of Court, rule 8.252(a)(1). In addition, exhibits 1 and 5 to that request (the July 5, 2007, agreement and the statement of decision in the Fox Hollow litigation are already part of the record on appeal, and exhibits 2 through 4 (various posttrial briefs filed in the Fox Hollow litigation) are irrelevant to our determination of the issues raised on appeal.

*B.     The Instant Legal Malpractice Action*

Meanwhile, in November 2010, plaintiffs initiated the instant action against Neumiller in San Joaquin County Superior Court for professional negligence, breach of contract, and breach of fiduciary duty. Neumiller's demurrer to the original complaint was sustained with leave to amend, and plaintiffs filed a first amended complaint, alleging Neumiller breached various duties owed to plaintiffs by failing to draft a binding settlement agreement and failing to timely submit the agreement for approval. According to plaintiffs, but for Neumiller's breach, the trial court would have enforced the July 5, 2007, agreement, obviating the need for a trial. The first amended complaint also alleges that Neumiller breached its duties to plaintiffs by failing to present certain evidence related to plaintiffs' damages, adequately refute Katakis's unclean hands defense, or object to certain documents the trial court relied upon in finding plaintiffs were guilty of unclean hands. According to plaintiffs, but for Neumiller's breach, the trial court would have found in plaintiffs' favor on their complaint and rejected Katakis's unclean hands defense.

Neumiller demurred to the first amended complaint, arguing collateral estoppel precluded plaintiffs from asserting that they would have obtained a better result but for Neumiller's acts and omissions because there had already been a finding that plaintiffs' unclean hands barred their recovery. Neumiller also asserted that plaintiffs could not claim as a matter of law that Neumiller breached any duty owed to plaintiffs by failing to submit the July 5, 2007, agreement for approval "when the judicially noticeable minute order establishe[d] that <u>no settlement agreement was ever reached</u> . . . ." The trial court agreed and sustained the demurrer without leave to amend. The trial court found "the doctrine of collateral estoppel prohibits Plaintiffs from maintaining any cause of action to the extent it relates to Defendants' alleged mishandling of the [Fox Hollow] litigation." The trial court reasoned that "the present lawsuit arises out of the Defendants' alleged mishandling of Plaintiffs' state court action involving Fox Hollow properties, and the

5

nature of Plaintiffs' conduct with respect to those properties was directly at issue and adjudicated fully in that prior action. In that earlier Court's Statement of Decision dated 8/18/09, which this Court has taken judicial notice of, that court determined that Plaintiffs' unclean hands barred them from any recovery. . . ." As for Neumiller's failure to timely submit the July 5, 2007, agreement for approval, the trial court found "that was clearly an impossible [feat] since the court ruled there was no meeting of the minds and thus, no settlement agreement existed as contemplated pursuant to . . . § 664.6." Judgment was entered in favor of Neumiller and against plaintiffs.

## DISCUSSION

Plaintiffs contend the trial court erred in sustaining the demurrer because (1) the first amended complaint states facts sufficient to state causes of action for professional negligence, breach of contract, and breach of fiduciary duty, and (2) the complaint is not barred under the doctrine of collateral estoppel because the issues raised in the present litigation are not identical to those previously decided in the Fox Hollow litigation.

## I
### Plaintiffs Lairtrust and Mauctrst Lack the Capacity to Pursue this Appeal

As a preliminary matter, Neumiller contends plaintiffs Lairtrust and Mauctrst lack the capacity to pursue this appeal because Lairtrust's powers, rights, and privileges have been suspended, and Mauctrst's have been cancelled. As a result, Neumiller asserts the appeal must be dismissed as to those plaintiffs. Neumiller is correct.

On November 1, 2011, the California Franchise Tax Board suspended Lairtrust's powers, rights, and privileges for failure to pay taxes. (Rev. & Tax. Code, § 23301.) According to a certificate of status issued by the Secretary of State on September 20, 2012, Lairtrust's "powers, rights and privileges remain suspended."[7]

---

[7] Defendants' unopposed November 16, 2012, request for judicial notice of the certificates of status issued by the Secretary of State on September 20, 2012, and related

6

On June 13, 2011, following dissolution by a vote of all of its members, Mauctrst filed a certificate of cancellation. According to a certificate of status issued by the Secretary of State on September 20, 2012, Mauctrst's status is "cancelled" and its "powers, rights and privileges have ceased."

It is well established that "a 'corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes.' [Citation.]" (*Bourhis v. Lord* (2013) 56 Cal.4th 320, 324.) "A corporation whose powers have been suspended may apply with the Franchise Tax Board for reinstatement after satisfying its obligations. ([Rev. & Tax. Code,] § 23305.) If the statutory requirements are met, the Franchise Tax Board issues a 'certificate of revivor.' ([Rev. & Tax. Code,] § 23305.) 'Upon the issuance of the certificate [of revivor] by the Franchise Tax Board the taxpayer therein named shall become reinstated . . . .' ([Rev. & Tax. Code,] § 23305a.)" (*Ibid.*)

There is no indication in the record on appeal that the Franchise Tax Board has issued a certificate of revivor or that Lairtrust otherwise has been reinstated. As a suspended company, Lairtrust lacks the capacity to pursue this appeal. (See *Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 310-312.) Accordingly, the appeal is dismissed as to it.

Turning to Mauctrst, on June 13, 2011, plaintiff Gregory Mauchley, as manager of Mauctrst, filed a "certificate of cancellation," indicating Mauctrst was dissolved "by a vote of all of the members."[8] Although "[a] limited liability company that is dissolved . .

---

records, for plaintiffs Lairtrust and Mauctrst is granted. (Evid. Code, §§ 452, subd. (c), 459.)

[8] "If a dissolution pursuant to subdivision (b) of Section 17707.01 is made by the vote of all of the members and a statement to that effect is added to the certificate of cancellation of articles of organization pursuant to subdivision (b), the separate filing of a certificate of dissolution pursuant to this subdivision is not required." (Corp. Code, § 17707.08, subd. (a)(3).)

7

. continues to exist for the purpose of winding up its affairs," (Corp. Code, § 17707.06, subd. (a)), the filing of a certificate of cancellation marks the completion of that process (*id.,* § 17707.08, subd. (b)(1) ["The persons who filed the certificate of dissolution shall cause to be filed in the office of, and on a form prescribed by, the Secretary of State, a certificate of cancellation of articles of organization upon the completion of the winding up of the affairs of the limited liability company pursuant to [Corporations Code] Section 17707.06 . . . ."].)

Here, Mauchley filed a certificate of cancellation on June 13, 2011. At that point, the articles of organization of Mauctrst were cancelled, and its powers, rights, and privileges, including its ability to appeal from an adverse judgment, ceased. (Corp. Code, § 17707.08, subd. (c).) Thus, like Lairtrust, Mauctrst lacks the capacity to pursue this appeal, and the appeal is dismissed as to it.

II
Plaintiffs' First Amended Complaint States a Claim for Professional
Negligence/Legal Malpractice

A demurrer tests the sufficiency of a complaint. (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.) On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. (*Ibid.*) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]' " (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1501.)

In addition to a cause of action for professional negligence plaintiffs also purport to allege causes of action for breach of fiduciary duty and breach of contract arising out of Neumiller's representation in connection with the Fox Hollow litigation. "However, 'the nature of a cause of action does not depend on the label the plaintiff gives it or the relief the plaintiff seeks but on the primary right involved.' [Citation.] Here, it is clear that the primary right involved in all of [plaintiffs'] claims is 'the right to competent legal representation' [citation], and thus, . . . all are properly characterized as claims for legal malpractice." (*Khodayari v. Mashburn* (2011) 200 Cal.App.4th 1184, 1190.) Accordingly, we shall analyze plaintiffs' claim as such.

"The failure to provide competent representation in a civil or criminal case may be the basis for civil liability under a theory of professional negligence. In a legal malpractice action arising from a civil proceeding, the elements are (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199.) To show damages proximately caused by the breach, the plaintiff must allege facts establishing that, "but for the alleged malpractice, it is more likely than not the plaintiff would have obtained a more favorable result." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1244, italics omitted.)

Here, the first amended complaint alleges (1) ". . . Truax, Jiminez, and Neumiller were specialists and had a duty at all times to act in conformance with the standard of care for the legal profession and to act with reasonable care and skill," (2) ". . . Truax and Jiminez and Neumiller's actions, as alleged above, breached the standard of care for the legal profession in the community in which Truax and Jiminez and Neumiller practice," and; (3) "[a]s a direct and proximate result of Truax and Jiminez and Neumiller's breaches of their duties to Plaintiffs, plaintiffs suffered actual damages in the loss of the

9

Settlement value including the 8 duplexes, loss of the attorneys' fees accrued and presently being billed as attorney's fees accrued after the Settlement, the fees that may be owed to Katakis for failure of Truax and Neumiller to be successful in the [Fox Hollow litigation], the cost of the appeal and Federal Action, and other potential damages in an amount to be determined." The actions "alleged above," include Neumiller's failure to (1) draft an enforceable settlement agreement; (2) timely submit the July 5, 2007, agreement for approval or draft an enforceable agreement; (3) present evidence of damages in the form of appraisals in plaintiffs' possession or the testimony of an expert they had retained; (4) adequately refute Katakis's unclean hands defense by presenting contrary information about Katakis which would negate unclean hands against the plaintiffs; and (5) object to certain documents the trial court relied upon in finding plaintiffs were guilty of unclean hands defense.

These allegations are sufficient to state a cause of action for legal malpractice. (*Coscia v. McKenna & Cuneo*, *supra,* 25 Cal.4th at p. 1199; *Viner v. Sweet*, *supra*, 30 Cal.4th at p. 1244.) Neumiller does not contend otherwise. Rather, Neumiller asserts that collateral estoppel bars plaintiffs from litigating whether it mishandled the underlying Fox Hollow litigation because there has already been a finding that plaintiffs are barred from recovering anything in that litigation under the doctrine of unclean hands. Neumiller also asserts that plaintiffs' allegations concerning Neumiller's "failure to enforce the settlement agreement" likewise are barred because there has already been a finding that there was no meeting of the minds, and thus, no settlement to enforce.

"The doctrine of collateral estoppel provides that a party to an action, or one in privity with a party, is barred from subsequently relitigating issues actually litigated and finally decided in a prior proceeding. [Citation.] ' "Traditionally, collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding 'if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits;

10

and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].' . . ." [Citations.]' [Citation.]" (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 694.)

The doctrine of collateral estoppel is inapplicable here because the malpractice claim raised in plaintiffs' first amended complaint was not actually litigated or necessarily decided at a previous proceeding. By alleging Neumiller committed malpractice, plaintiffs do not claim that the trial court erred in determining that there was not a meeting of the minds with respect to the July 5, 2007, agreement or that plaintiffs had unclean hands based on the evidence and arguments presented. Instead, plaintiffs claim that but for Neumiller's acts and omissions -- namely Neumiller's failure to draft an enforceable agreement, delay in presenting the agreement to the trial court for adoption, and failure to present certain evidence or adequately refute that presented by Katakis at trial -- the trial court would more likely than not have reached different conclusions. Whether Neumiller was negligent has not and could not have been litigated previously.

Contrary to Neumiller's assertion, this court's decision in *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048 (*Blain*) does not hold otherwise. There, the plaintiff, a physician-defendant in a medical malpractice action, sued his attorney for legal malpractice. (*Id.* at p. 1052) The plaintiff alleged that he had suffered damages by lying at a deposition, allegedly on the advice of his attorney. (*Ibid.*) The question was whether unclean hands precluded the plaintiff's action against his lawyer for legal malpractice. (*Ibid.*) Having reviewed the amended complaint in conjunction with more candid allegations in his original complaint, we determined: The plaintiff "alleges that *he* committed serious misconduct which was the cause of his injuries. This leads to consideration of the law of unclean hands." (*Id.* at p. 1058.) We found that under the doctrine of unclean hands, the plaintiff had no cause of action for injuries necessarily caused by his own misconduct: "[The plaintiff's] emotional distress, if any, is

11

attributable to his own knowing misbehavior.  Even the most naive must know that lying under oath is illegal.  . . . [T]he relationship of misconduct to harm in this case is direct and not incidental.  The misconduct was, so it is alleged, the instrumentality of harm." (*Id.* at p. 1063.)  We similarly disposed of the plaintiff's claim to have lost the ability to practice medicine, finding his misconduct "inherently involved" that risk.  (*Id.* at p. 1064.)

The present case is distinguishable.  Unlike the defendant attorney in *Blain,* Neumiller bases its assertion that "[t]he defense of unclean hands bars Plaintiffs from asserting claims against [Neumiller] as a matter of law" not on any specific misconduct but on the trial court's finding in the Fox Hollow litigation that plaintiffs were guilty of unclean hands.  Neumiller does not refer to any incidents of misconduct in its respondent's brief; rather, Neumiller relies solely upon the trial court's finding in the Fox Hollow litigation:  "[Plaintiffs] cannot get around the undisputed fact that they were barred from recovery in the [Fox Hollow litigation], not because of [Neumiller's] handling of their case, but instead because of their own unclean hands."  As previously discussed, plaintiffs claim that but for Neumiller's alleged malpractice, there would have been no such finding.  That issue has not yet been litigated.

Neumiller also cites *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658 (*Peregrine*) for the proposition that "[t]he defense of unclean hands bars Plaintiffs from asserting claims against [it] as a matter of law."  That case likewise is inapposite to the circumstances of this case.  There, a bankruptcy trustee who had succeeded to the interests of a corporation used to perpetrate a Ponzi scheme sued a law firm for malpractice and for aiding and abetting the Ponzi scheme.  (*Id.* at p. 665)  The court held that the doctrine of unclean hands barred both the corporation and its successor in interest (the bankruptcy trustee) from pursuing claims against the law firm.  (*Id.* at pp. 679-680.)  The court reasoned that the individual who owned and controlled the corporation was the primary architect of the Ponzi scheme and

12

applied the doctrine of unclean hands to impute the owner's fraud to the corporation. (*Id.* at p. 679.) In doing so, the court found the corporation and the owner's "orchestration of the Ponzi scheme that defrauded investors is intimately related to the professional malpractice claims before the court," which "are based entirely on the assertion that [the law firm's] professional advice and tactics enabled [the corporation and the owner] to perpetuate their fraud on investors. . . . For [the corporation]--the company plaintiffs allege was controlled by [the owner] and used by him to operate the Ponzi scheme--to now complain of [the law firm's] role in enabling it to commit the fraud is unfair, and it is precisely this sort of unfairness the unclean hands doctrine seeks to address." (*Id.* at p. 681.)

Again, unlike the defendant law firm in *Peregrine*, Neumiller does not point to any specific instances of misconduct in support of its assertion that plaintiffs' malpractice action against it is barred by unclean hands. Rather, it asserts that the trial court's finding in the Fox Hollow litigation that plaintiffs' claims against Katakis were barred due to plaintiffs' unclean hands collaterally estops plaintiffs from pursuing their malpractice action against Neumiller as a matter of law. According to Neumiller, "There can be no dispute that the present lawsuit arises out of [Neumiller's] alleged mishandling of Plaintiffs' State Court Action involving the Fox Hollow properties, and the nature of Plaintiffs' conduct with respect to the same Fox Hollow properties was a matter directly at issue and adjudicated in full in the underlying action." Neumiller's assertion ignores plaintiffs' allegation that but for Neumiller's alleged malpractice, there would have been no finding in the Fox Hollow litigation that plaintiffs' were guilty of unclean hands. Whether that is the case has yet to be determined.

While plaintiffs can no longer challenge the trial court's rulings in the Fox Hollow litigation, they may still attempt to prove that had Neumiller included certain additional terms in the July 5, 2007, agreement, submitted the agreement for approval on July 6, 2007, or shortly thereafter, presented evidence of plaintiffs' damages in the form of

13

appraisals in plaintiffs' possession or the testimony of an expert they had retained, and presented information about Katakis's unclean hands, a different result would have ensued. Accordingly, plaintiffs are not barred by the doctrine of collateral estoppel from pursuing their malpractice claim. "To hold otherwise would be to rule that where an attorney's negligence has caused a court to make an erroneous adjudication of an issue, the fact that the court had made that adjudication absolves the attorney of all accountability and responsibility for his negligence. That cannot be and is not the rule." (*Ruffalo v. Patterson* (1991) 234 Cal.App.3d 341, 344 (*Ruffalo*).)

This case is analogous to *Ruffalo*. There, the plaintiff sued her former counsel for malpractice arising out of a marital dissolution action. According to the plaintiff's malpractice complaint, in the dissolution action her counsel advised her to characterize certain property as community property. However, when she retained new counsel, she contended she had a separate interest in the property. (*Ruffalo, supra*, 234 Cal.App.3d at pp. 342-343.) The trial court found the property to be community property. In plaintiff's subsequent malpractice action, she alleged the trial court would not have found the property to be community property had her counsel properly advised her of her separate interest in the property. (*Ibid*.) The trial court granted summary judgment on the ground that collateral estoppel barred the plaintiff from relitigating the character of the challenged property. (*Id*. at p. 343.) The reviewing court reversed, explaining: "The sense of this legal malpractice case is plaintiff's claim that she was precluded by her attorney's negligence from fully and fairly litigating the character of the [challenged] property in the previous dissolution action. Moreover, she does not seek a redetermination as to the character of the property; rather, she seeks to recover for her attorney's alleged negligence in instructing and causing her to characterize the property as community property in the dissolution action. Her contention is that the court's decision therein would have been different absent the negligence of her attorney, who is the defendant in this action." (*Id.* at p. 344.)

The court's reasoning in *Ruffalo* is equally applicable here. Plaintiffs contend the outcome of the underlying litigation would have been different absent Neumiller's negligence in drafting the July 5, 2007, agreement, failing to timely submit the settlement agreement to the court for approval, presenting plaintiffs' case at trial, and defending against the Neumiller's unclean hands defense. Because of the nature of legal malpractice cases which require case-within-case determinations, there will often be some overlap of issues between the malpractice action and the underlying proceeding. But as *Ruffalo* demonstrates, despite such overlap, the same issue is not being litigated. The central purpose of plaintiffs' malpractice action is not to challenge the trial court's findings in the Fox Hollow litigation. Instead, plaintiffs claim Neumiller breached its duty of care to plaintiffs culminating in an unfavorable decision against them in that action.

Whether plaintiffs will be able to *prove* their malpractice claim remains to be seen. At this stage of the proceedings, however, plaintiffs have alleged facts sufficient to state such a claim.[9] (*Pete v. Henderson* (1954) 124 Cal.App.2d 487, 490 ["[T]he fact that it may be difficult to make such proof is no ground to deny the right to present such proof if it can be made."].)

---

[9] In light of our conclusion, we need not address plaintiffs' contention that the trial court erred in sustaining the demurrer without leave to amend. Neumiller's motion to strike plaintiffs' reply brief on the grounds "the brief contains no citation to the record and no pertinent or intelligible argument" is denied. To the extent portions of the brief are unintelligible, we decline to consider them. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522-523.)

15

DISPOSITION

The judgment is reversed.  The demurrer is overruled.  Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278.)


    BLEASE    , J.


We concur:


    RAYE    , P. J.


    BUTZ    , J.