Filed 11/5/13

**<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>**


# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Placer)

----

| | |
|---|---|
| MICHAEL YANEZ, | C070726 |
| Plaintiff and Appellant, | (Super. Ct. No. S-CV-0026760) |
| v. | |
| BRIAN PLUMMER, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Placer County, Colleen M. Nichols, Judge.  Reversed.

Larry Lockshin and Jennifer Marsh for Plaintiff and Appellant.

Hansen, Kohls, Sommer & Jacob, LLP, Daniel V. Kohls and Christine E. Jacob for Defendant and Respondent.


Plaintiff Michael Yanez sued his former employer, Union Pacific Railroad Company (Union Pacific), for wrongful discharge, as well as Union Pacific's in-house counsel, Brian Plummer, for legal malpractice, breach of fiduciary duty, and fraud.

Union Pacific fired Yanez for dishonesty, citing a discrepancy between a witness statement that Yanez wrote and a deposition answer he gave concerning a coemployee's

1

on-the-job injury (the deposition answer occurred in the coemployee's lawsuit against Union Pacific under the Federal Employers Liability Act (FELA; 45 U.S.C. § 51 et seq.)). At the deposition, Plummer represented *both* Union Pacific and Yanez. Yanez claims the alleged dishonesty was a simple miswording in his witness statement that Plummer, during the deposition, manufactured into something sinister for Union Pacific's benefit.

Plummer moved successfully for summary judgment, claiming that Yanez could not meet the causation element of Yanez's three causes of action against him. We reverse, concluding that Yanez has raised a triable issue of material fact that but for Plummer's conduct, Union Pacific would not have fired Yanez.

## FACTUAL BACKGROUND

The summary judgment papers contain the following evidence. Because a successful summary judgment motion denies the losing party a trial, the papers of the moving party are strictly construed while those of the losing party are liberally construed. (*Shively v. Dye Creek Cattle Co.* (1994) 29 Cal.App.4th 1620, 1627.)

### Accident and Witness Statements

On September 6, 2008, Yanez was working with another Union Pacific machinist, Robert Garcia, in replacing locomotive motors. An elevator-like device known as a "drop table" is used to raise the motors from the "drop pit" over which the locomotive is situated; Yanez was operating the drop table when Garcia went into the drop pit to retrieve a tool, fell, and was injured.

As the only percipient witness of Garcia's accident, Yanez wrote two witness statements, one shortly after it occurred (hereafter first statement) and a longer second statement about an hour later (hereafter second statement).

2

The first statement was requested by Union Pacific day shift supervisor Shawn Orr, and provided: "I Michael Yanez was working on the UP 5566 [locomotive] on drop table #2 with Boby Garcia, we were going outside to raise #5 T/M [locomotive motor]. Boby had droped a socket down into pit & said he would go get it while I was raising motor outside I was watching motor come up while Boby went downstairs & went to retrieve tool *had sliped & fell on concrete floor, soaked in oil & grease*." (Italics added.)

Leo Marin, second in command at the Union Pacific facility, then told Yanez to write a second statement because the first statement lacked details. The second statement provided: "I Michael Yanez was working on the UP 5566 [locomotive] on drop table #2 with Boby Garcia. We were going up with T/M [locomotive motor] outside. Boby had told me he had droped a socket & was going to retrieve it. I was looking down at motor coming up, but I could see Boby going downstairs & he walked out on concrete floor. *I saw Boby slip & fall down on oil soaked floor*, he was lying on his back when I came downstairs to help him up, he complainde of his knee & back hurt. I called for hellp. James King responded." (Italics added.)

***Yanez's Predeposition Meeting with Plummer***

The injured employee, Garcia, sued Union Pacific under the FELA, and deposed Yanez therein. Union Pacific assigned attorney Plummer to defend it against Garcia's FELA lawsuit.

As instructed by Plummer, Yanez met with Plummer on the morning of the day of his deposition, June 17, 2009. Plummer confirmed that Yanez had not "actually seen" Garcia fall down, and asked Yanez about the conditions at Garcia's accident site. Nothing was said regarding the two statements that Yanez had written more than nine months before.

Yanez expressed concern about his job because his deposition testimony was likely to be unfavorable to Union Pacific, and asked Plummer who would "protect" him

3

at the deposition. Plummer responded that Yanez was a Union Pacific employee and Plummer was his attorney for the deposition; as long as Yanez told the truth in the deposition, Yanez's job would not be affected. Plummer never told Yanez about any conflict of interest involving Plummer representing Union Pacific and Yanez at the deposition.

### *Yanez's Deposition in the Garcia Lawsuit*

At the deposition, Garcia's counsel elicited from Yanez that Yanez had not "witness[ed] [Garcia's] accident," but was aware of it shortly after it happened. Garcia's counsel did not pursue this point any further. But Garcia's counsel had Yanez testify about several conditions at the accident site that could be deemed unsafe.

Plummer then questioned Yanez. After highlighting Union Pacific's "total safety culture" and trying to distance Union Pacific management from allegedly unsafe conditions, Plummer confirmed it was Yanez's "testimony today . . . that [he] didn't see [Garcia] slip," that "[i]t wasn't within [Yanez's] line of sight." Then Plummer turned to Yanez's written witness statements. Plummer, however, at the deposition, only marked as an exhibit, and emphasized, Yanez's second statement ("*I saw Boby slip & fall* down on oil soaked floor" [italics added]). In passing and without any followup from Plummer, Yanez mentioned he "had worded [his second statement] wrong."

### *Union Pacific's Disciplinary Hearing and Termination of Yanez*

The director of the Union Pacific locomotive facility, Dennis Magures, attended Yanez's deposition in Garcia's lawsuit as a representative of Union Pacific.

Following Yanez's deposition, Magures obtained a copy of the transcript to confirm that Yanez's deposition testimony—that he did not "witness" or "see" Garcia slip and fall—conflicted with Yanez's second statement that he "saw Boby slip & fall down."

4

This confirmation led to a disciplinary hearing against Yanez (also termed a formal investigation) and then to his termination from Union Pacific, in August 2009, for violating company policy against dishonesty.

At the disciplinary hearing, and confirmed in his deposition in Yanez's action here, Magures testified that the dishonesty charge against Yanez was based on the contradiction between Yanez's second statement "and the deposition that [Yanez] gave under oath to attorneys" and that the deposition "triggered the charges brought before [Yanez]."

Yanez, at the disciplinary hearing, read a "closing statement" explaining his second statement. Yanez wrote the second statement "in the haste of the moment"; that instead of stating "I saw Bobby slip and fall down on oil soaked floor," the statement should have read (in line with Yanez's first statement), "I saw that Bobby *had* slipped and fell down on oil soaked floor."[1] (Italics added.)

## DISCUSSION

### I. Legal Principles—Summary Judgment Review and Causation

#### A. *Summary Judgment Review*

The aim of the summary judgment procedure is to determine, through the use of declarations and evidence disclosed in discovery, whether the parties possess conflicting evidence on a material issue that requires a trial to sort out—in short, whether a triable issue of material fact exists. (*Kurokawa v. Blum* (1988) 199 Cal.App.3d 976, 988.)

Summary judgment is properly granted to a defendant who shows that an element of the plaintiff's cause of action cannot be established, unless the plaintiff sets forth

---

[1] At the disciplinary hearing, Yanez had the order of the two witness statements reversed—i.e., stating the first statement came after the second statement. Plummer was confused along similar lines in Yanez's deposition.

5

specific facts showing a triable issue of material fact as to that element (here, the element at issue is causation).  (Code Civ. Proc., § 437c, subds. (o)(1), (p)(2); *Rio Linda Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732, 735.)

We review independently from the trial court the summary judgment papers.  We do not resolve factual issues but ascertain whether there are any to resolve.  (*Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 474-475.)

### B.  Causation

Yanez and Plummer agree the fundamental issue on appeal is whether there exists a triable issue of material fact that Plummer *caused* Yanez to be terminated from Union Pacific.

This question of causation applies to Yanez's cause of action against Plummer for legal malpractice, as well as Yanez's independent causes of action against Plummer for breach of fiduciary duty and fraud.  (See *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086 [breach of fiduciary duty is a tort distinct from legal malpractice]; *Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 562 [in addition to legal malpractice, civil actions against an attorney may include intentional fraud or constructive fraud (based on breach of fiduciary duty)]; see also Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2013) ¶¶ 6:425 to 6:426, pp. 6-92 to 6-93 (rev. #1, 2012) (Vapnek).)

Yanez alleges essentially that the conduct of attorney Plummer and facility director Magures combined to cause his harm—his termination.

In a legal malpractice action where, as here, there is a combination of causes, none of which is sufficient without the others to have caused the harm, the test for causation is the "but for" test:  but for the defendant's conduct, the harm would not have occurred. (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1239-1241 & fn. 3 (*Viner*); see Vapnek, *supra*,

6

Professional Responsibility, ¶ 6:310, p. 6.60.14, ¶ 6:319, pp. 6-60.23 to 6-60.24 (rev. #1, 2013).)

Because the "substantial factor" test of causation subsumes the "but for" test, the "but for" test has been phrased in terms of "substantial factor," as follows, in the context, as here, of a combination of causes dependent on one another: A defendant's negligent conduct may combine with another factor to cause harm; if a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the defendant is responsible for the harm; a defendant cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing the plaintiff's harm; but conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct. (See *Viner*, *supra*, 30 Cal.4th at pp. 1239-1241; *Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1095 (*Mayes*); 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1185, pp. 552-553; CACI No. 430 & Directions for Use to CACI No. 430 (2013) p. 282 (Dec. 2007 rev.); CACI No. 431.)

In a legal malpractice action, causation is an issue of fact for the jury to decide except in those cases where reasonable minds cannot differ; in those cases, the trial court may decide the issue itself as a matter of law. (*Ishmael v. Millington* (1966) 241 Cal.App.2d 520, 525-526, 529 (*Ishmael*).)

We now apply these legal principles to the evidence disclosed in the summary judgment papers.

## II. Applying the Legal Principles to the Evidence in the Summary Judgment Papers

Yanez and Union Pacific occupied adverse positions regarding Garcia's FELA lawsuit against Union Pacific. Yanez—working with Garcia when Garcia was injured, and the only percipient witness to Garcia's accident—was aware of several unsafe work conditions that may have contributed to Garcia's injury.

7

Despite these conflicting interests, Union Pacific's in-house counsel, Plummer, represented both Union Pacific and Yanez at Yanez's deposition in Garcia's lawsuit. Prior to being deposed, Yanez expressed to Plummer his concern about how this state of affairs would affect his job, and Yanez asked Plummer who would "protect" him at the deposition. Plummer responded that Yanez was a Union Pacific employee and Plummer was Yanez's attorney for the deposition, and stated that if Yanez told the truth at the deposition, his job would not be affected.

Without the informed written consent of each client, a lawyer representing more than one client shall not (1) accept representation of more than one client in a matter in which the interests of the clients potentially conflict (State Bar Rules Prof. Conduct, rule 3-310(C)(1)) or (2) accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict (State Bar Rules Prof. Conduct, rule 3-310(C)(2)). (See also Vapnek, *supra*, Professional Responsibility, ¶¶ 4:27 to 4:29, pp. 4-16 to 4-17 (rev. #1, 2012).)

Yanez presented evidence in his summary judgment papers that Plummer neither informed him about conflicts with Union Pacific nor obtained his written consent to represent him despite such conflicts.

Yanez also presented evidence in his summary judgment papers that, pursuant to questioning from Garcia's counsel at the deposition, Yanez testified adversely to Union Pacific regarding unsafe work conditions and acknowledged that he did not "witness" Garcia's accident. Then Plummer, without having prepared Yanez for what was coming, had Yanez confirm during the deposition that he did not "see" Garcia slip and fall, only to spring upon Yanez his second statement, in which Yanez stated the opposite. Plummer did not provide Yanez a chance to explain this discrepancy; nor did Plummer mark as a deposition exhibit (as he did the second statement) Yanez's first statement, which effectively acknowledged that Yanez did not see Garcia slip and fall.

As Yanez argues based on this summary judgment evidence, "Plummer's violation of his legal obligations to represent his client, Yanez, was calculated to portray 'in the worst possible light' Yanez's [deposition] testimony in order to benefit Plummer's other client at the deposition, Union Pacific, [which] then relied on that 'worst possible light,' [via facility director Magures and other Union Pacific personnel,] to fire Yanez."

Violation of the State Bar Rules of Professional Conduct prohibiting concurrent representation of conflicting interests without each client's informed written consent constitutes evidence of malpractice liability and breach of fiduciary duty but does not, standing alone, prove the malpractice or the fiduciary breach. (*BGJ Associates v. Wilson* (2003) 113 Cal.App.4th 1217, 1227 [these rules were not intended to create new civil causes of action on their own]; see *Ishmael*, *supra*, 241 Cal.App.2d at pp. 526-527 [malpractice]; *Mirabito v. Liccardo* (1992) 4 Cal.App.4th 41, 44-45; see also Vapnek, *supra*, Professional Liability, ¶¶ 6:292 to 6:293, pp. 6.60.9 to 6.60.10 (rev. #1, 2013).)

Plummer maintains he played no role in causing Yanez's termination, as a matter of law, because (1) he (Plummer) had no involvement in what Yanez wrote on his second statement (Yanez wrote he "saw" Garcia slip and fall); (2) Yanez admitted to Garcia's counsel in the deposition that he did not "witness" Garcia's "accident," prior to any questioning by Plummer; (3) there was a "formal investigation" (disciplinary hearing charging Yanez with dishonesty in the deposition, in light of his second statement); (4) Yanez had the opportunity to explain this discrepancy at the formal investigation; and (5) Plummer had no role in uncovering Yanez's deception or in the process leading to his termination.

We disagree with Plummer and conclude Yanez has presented a triable issue of material fact that but for Plummer's alleged malpractice, breach of fiduciary duty and fraud, Yanez would not have been terminated.

9

Yanez has tendered evidence that Plummer's conduct combined with Union Pacific director Magures's conduct (and the conduct of other Union Pacific personnel with firing authority) to cause his termination.

As for Plummer's conduct, it is true Yanez wrote in his second statement that he "saw" Garcia slip and fall, and it is true Yanez first admitted to Garcia's counsel in the deposition that he did not "witness" Garcia's "accident." But it was Plummer who highlighted Yanez's deposition testimony that he did not "see" Garcia slip; it was Plummer who presented the second statement at the deposition; it was Plummer who got Yanez, *under oath at the deposition*, to effectively admit that his deposition testimony conflicted with the second statement; it was Plummer who did not offer Yanez a chance to explain this discrepancy; and it was Plummer who failed to present the first statement as an exhibit at Yanez's deposition.

As for Magures's conduct, he attended Yanez's deposition in Garcia's lawsuit as a representative of Union Pacific and obtained the transcript to confirm that Yanez's deposition testimony conflicted with his second statement, as to what he had seen regarding Garcia's slip and fall. Yanez presented evidence in his summary judgment papers that Magures conceded that Union Pacific's dishonesty charge against Yanez was based on the contradiction between Yanez's second statement "and the deposition that [Yanez] gave under oath to attorneys" in the Garcia lawsuit; that if Yanez had not been deposed in the Garcia lawsuit, he probably would not have been charged with dishonesty; that without the deposition, Union Pacific would not have known about the alleged dishonesty; and that this deposition triggered the dishonesty charges brought against Yanez. Indeed, Yanez's summary judgment evidence further shows that Union Pacific had the two conflicting statements in its possession for over nine months prior to Yanez's deposition in the Garcia case, without ever charging Yanez with dishonesty.

10

As we have seen from the language of the "substantial factor" test of causation that subsumes the "but for" test of causation which applies here, a defendant's negligent conduct may combine with another factor to cause harm. If a defendant's negligence was a substantial factor in causing a plaintiff's harm, then that defendant is responsible for the harm. This test of causation, most importantly in "but for" terms, adds that conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct. (See *Viner*, *supra*, 30 Cal.4th at pp. 1239-1241; *Mayes*, *supra*, 139 Cal.App.4th at p. 1095; CACI No. 430 & Directions for Use to CACI No. 430 (2013) p. 282 (Dec. 2007 rev.); CACI No. 431; see also *Lysick v. Walcom* (1968) 258 Cal.App.2d 136, 153, fn. 7 [as long as the lawyer's conduct was a "but for" cause of the plaintiff's harm, it need not have been the sole cause].) Plummer maintains the same harm—termination—would have befallen Yanez, as a matter of law, without Plummer's conduct.

But Yanez's summary judgment evidence shows that Plummer played a substantial role, during Yanez's deposition in the Garcia case, in uncovering the deception Union Pacific charged against Yanez, and that without that deposition testimony, Yanez likely would not have been charged with dishonesty—the deposition triggered the charge (and the charge resulted in Yanez's termination). This evidence presents a triable issue of material fact that but for Plummer's alleged malpractice, breach of fiduciary duty, and fraud Yanez would not have been terminated. The fact that Yanez was finally allowed to explain—in his own closing statement at the disciplinary hearing—the discrepancy between his second statement and his deposition testimony in the Garcia case, was a matter of too little, too late, in light of Plummer's conduct during the deposition.

Finally, Plummer begins his brief on appeal with the startling observation that Yanez "desperately seeks to create a 'rule for all seasons' conflict of interest where one does not exist—between employer and employee. Specifically, [Yanez] seeks to have

11

this Court announce a new rule stating that an attorney for an employer may never represent an employee at the same time." Summary judgment evidence here shows a conflict between the employer and the employee, and the employer's lawyer representing both the employer and the employee (to the employee's detriment) without obtaining the employee's informed written consent. We have not announced a "rule for all seasons." We have merely applied well-recognized rules of professional conduct to the conflict of interest in this case.[2]

## DISPOSITION

The judgment is reversed. Yanez is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278 (a)(1), (2).) (*CERTIFIED FOR PUBLICATION.*)


              BUTZ            , J.


We concur:


        RAYE        , P. J.


        HOCH        , J.

---

[2] In light of our resolution, it is unnecessary to consider Yanez's contention that the trial court abused its discretion in sustaining objections to certain evidence.