Filed 10/14/24  McPhail v. Mackey CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BRADY McPHAIL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>THOMAS W. MACKEY,<br><br>    Defendant and Respondent. | 2d Civ. No. B336575<br>(Super. Ct. No. 56-2021-00555128-CU-PO-VTA)<br>(Ventura County) |

Brady McPhail appeals a judgment in favor of defendant Thomas W. Mackey dba T.W. Mackey Electric Company (Mackey) following the trial court's order granting Mackey's motion for summary judgment.  McPhail filed an action alleging Mackey, an electrician, negligently performed electrical work that caused McPhail to be shocked and suffer personal injuries.  We conclude, among other things, that there are triable issues of fact.  We reverse.

## FACTS

McPhail was employed as a welder by the Simi Valley Unified School District (school district).  On July 22, 2019, he was

at his welding machine.  He was "severely injured when his welding machine became unexpectedly electrified."  He received an electrical shock that caused him to fall "backwards onto the ground."

McPhail claimed his injuries were caused by Mackey, an electrician, who performed electrical work for the school district.  McPhail filed an action for damages against Mackey, alleging his negligent electrical work caused his injuries.

Mackey answered and then filed a motion for summary judgment claiming: 1) he did not breach "any duty of care"; and 2) under the "Completed and Accepted doctrine, a contractor whose completed work has been accepted is not liable to third parties injured as a result of the condition of the work."  The school district owned the welding machine and decided to relocate it to a "new welding shop."  It hired Mackey "to install a surface mount 50 amp 480v receptacle on the south wall of the new location for a Lincoln TIG Welder."  Mackey completed the work and was paid.  The work was performed pursuant to the instructions and accepted by Dave Damiani of the school district.

McPhail claimed the completed and accepted doctrine did not apply because "[d]etection of Defendant's negligence would have required detailed knowledge of electrical wiring and was not readily apparent to a non-expert like the school official who accepted this work," Glen Newell.  Mackey was on notice that his electrical work had to be compatible with the welding machine in the shop.  McPhail declared he had a "walk-through" with Mackey when the welding machine was present, and he "specifically informed" Mackey "where on the wall [he] would need a receptacle for the TIG Welder."

McPhail's expert, John Nicholas, declared Mackey breached a duty of care because his wiring of the building created an unsafe condition for welding machine users. Mackey failed to inspect "the TIG Welder to see what type of phase the machine was." He should have known that connecting a "single-phase" welding machine to a "three-phase receptacle" created a dangerous condition which caused the electrical shock experienced by McPhail. Mackey should have "installed the wiring from the panel going into the building as single-phase, and . . . installed a single-phase receptacle." He installed a "three-phase" for the "electrical panel" and "receptacle." The school district did not tell him what phase to use or know what phase he was using.

Mackey's expert, Dave Luxa, declared Mackey was "not at fault." "An electrician was not expected to know that the TIG Welder was single phase . . . or three phase . . . ." "[T]he TIG Welder had not yet been delivered to the current shop." "Because the TIG Welder had been improperly wired with a three-phase (three 'hots,' and a ground) plug . . . , it was able to be plugged into the installed receptacle."

Mackey testified the electrical "receptacle" he was to install was "going to be dedicated" for the use of the TIG welding machine. He could not inspect that machine to determine if it was a single-phase or three-phase because it was not in the shop at that time. When later asked if the machine was there, he testified, "I can't remember." He said the work he performed was inspected by Damiani.

McPhail claimed there were triable issues of fact. He disputed Mackey's claim that the welding machine was not in the shop and unavailable for his inspection. He declared the "TIG

3.

Welder was present in the welding room at that time." Nicholas declared that even if the machine was not in the shop, Mackey had a duty to find out the machine's phase because it is "extremely dangerous to wire a receptacle for three-phase if it is to be used on a machine which is single-phase."

Mackey claimed installing a three-phase wall receptacle in a shop with a single-phase welding machine was safe because "there is no physical way a single-phase machine could plug into a three-phase receptacle."

Nicholas disagreed; he said single-phase welding machines can be wired to fit a three-phase receptable. Welding machines can be three phase or single phase and the plugs for the two are similar. "It is reasonably foreseeable to an electrician that someone might purchase the incorrect plug–especially when the two types of plugs look very similar." That is what occurred here. Nicholas and Luxa agreed that McPhail's machine had a plug to fit the three-phase receptacle. Nicholas claimed Mackey's duty to install the correct receptacle for McPhail's machine required him to inspect that machine, and he failed to do so. Had he done so, he would have seen this "dangerous set-up" of a single-phase machine with a plug to fit a three-phase receptacle; and he should have known that, when plugged in, McPhail's machine would be "electrified" and McPhail shocked.

The trial court granted Mackey's motion for summary judgment.

## DISCUSSION

"Summary judgment provides courts with 'a mechanism to cut through the parties' pleading in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' " (*San Jose Neurospine v. Aetna Health of California,*

4.

*Inc.* (2020) 45 Cal.App.5th 953, 957.) "A defendant may obtain summary judgment by showing one or more elements of plaintiff's cause of action is missing or that there is a complete defense to the cause of action." (*Ibid.*)

" ' "On appeal, the reviewing court makes ' "an independent assessment of the correctness of the trial court's ruling [regarding summary judgment], applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." ' " ' " (*San Jose Neurospine v. Aetna Health of California, Inc., supra,* 45 Cal.App.5th at p. 958.) " 'Our task is to determine whether a triable issue of material fact exists.' " (*Ibid.*) " '[A]ny doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion.' " (*Ibid.*)

*The Completed and Accepted Doctrine*

Mackey relied on the completed and accepted doctrine in moving for summary judgment.

" '[W]hen a contractor . . . completes work that is accepted by the owner, the contractor is not liable to third parties injured as a result of the condition of the work, even if the contractor was negligent in performing the contract, *unless the defect in the work was latent or concealed.*' " (*Neiman v. Leo A. Daly Co.* (2012) 210 Cal.App.4th 962, 969, fn. omitted, italics added.) " 'The rationale for this doctrine is that an owner has a duty to inspect the work and ascertain its safety, and thus the owner's acceptance of the work shifts liability for its safety to the owner, *provided that a reasonable inspection would disclose the defect.*' " (*Ibid.*, italics added.)

McPhail showed the defect was latent. His separate statement of facts shows 1) Glen Newell, the school representative who approved the payment to Mackey, did not have any training or experience to determine "that Mackey had committed negligence"; and 2) the "negligence of Mackey *was a latent defect* that Newell and the school officials approving payment and accepting the work should not have been expected to catch." (Italics added.)

When deposed, Newell was asked, "[I]f you look at the receptacle you wouldn't know whether the receptacle was done correctly or not, would you?" Newell: "Correct." "And if there was a defect in the work, you certainly wouldn't know it, correct?" Newell: "Correct." He was asked, "Whatever problem there would be, if there was one, would be latent and, I'm sorry, *would be latent or hidden,* something you wouldn't know, right?" Newell: "Correct." (Italics added.)

Mackey claimed his work was inspected by Dave Damiani of the school district. But Damiani's deposition testimony does not support that claim. When asked whether he attended any meeting with Mackey, Damiani said, "I'm not really sure." "If you were at a meeting with Mackey, do you have any idea of what was discussed?" Damiani: "No." When asked if he had a "specific memory" of telling Mackey to use "three-phase" or "single-phase," he said "No." "Have you ever seen the Mackey invoice or *work order for their work*?" (Italics added.) Damiani: "No."

Mackey suggests McPhail did not prove the completed and accepted doctrine did not apply. But this doctrine is an affirmative defense. (*Neiman v. Leo A. Daly Co., supra,* 210 Cal.App.4th at p. 969.) Mackey had the burden to prove it.

*The Dangerous Condition Exception*

There is an exception to the completed and accepted doctrine where "the article causing injury" is "abnormally dangerous" (*Hale v. Depaoli* (1948) 33 Cal.2d 228, 230); where the work is "imminently dangerous to third persons" (*Stewart v. Cox* (1961) 55 Cal.2d 857, 862); or is "so negligently defective as to be imminently dangerous" (*Johnston v. Long* (1943) 56 Cal.App.2d 834, 837).  The doctrine does not apply where the contractor creates a dangerous condition that is latent or hidden.  (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1467-1468.)

Direct contact with electrical power line current is dangerous and potentially deadly.  (*Austin v. Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 231; *Krongos v. Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 394; *Bartuluci v. San Joaquin Light & Power Corp.* (1937) 21 Cal.App.2d 376, 385 [" 'any line carrying electricity for power is dangerous' "].)  If " 'the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger' " and outside the doctrine.  (*Freeman v. Mazzera* (1957) 150 Cal.App.2d 61, 64.)  A reasonable trier of fact could infer from John Nicholas's declaration that this dangerous exception to the doctrine applies.  Consequently, there are triable issues of fact as to whether the completed and accepted doctrine applies.

*Duty of Care*

Mackey claimed he did not owe a duty of care to McPhail.  But his work involved installing a conduit for electrical power at a place where people work.  "One who supplies electricity is under a legal duty to use due care in the construction and

installation of the necessary electrical facilities." (*Monroe v. San Joaquin Light & Power Corp.* (1941) 42 Cal.App.2d 641, 647.) "This legal duty is necessarily extended *to any person who might with reasonable anticipation be endangered* by faulty or improper electrical equipment or installation." (*Ibid.*, italics added.) The duty is imposed to protect people from "the inherent risk of injury" caused by electrical current. (*Austin v. Riverside Portland Cement Co., supra*, 44 Cal.2d at p. 231.)

Mackey testified he knew that the electrical receptacle that he was to install was "going to be dedicated" for the use of the TIG welding machine. The scope and extent of what duty he owed to McPhail is " 'a factually oriented inquiry.' " (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 906.) From McPhail's evidence, a trier of fact could reasonably infer: 1) Mackey's electrical work was for McPhail's work place; 2) Mackey had a walk-through with McPhail; 3) Mackey was on notice that his electrical work had to be compatible with McPhail's welding machine; 4) to perform that duty, Mackey had to inspect the machine to be able to select a wall receptacle that was proper for the machine and safe for its user; and 5) because Mackey was an electrician connecting electric power, he had a special duty to safely perform his electrical work for the protection of the welding shop employees and consequently McPhail fell within the scope of Mackey's duty of care. (*Monroe v. San Joaquin Light & Power Corp., supra*, 42 Cal.App.2d at p. 647.)

*Facts Showing All the Elements of a Negligence Cause of Action*

McPhail filed a separate statement of material facts entitled "Plaintiff's Additional Evidence in Opposition to the Motion for Summary Judgment." It contained additional facts

8.

Nos. 49 to 72.  Mackey did not file a separate statement of facts to respond to those additional facts.

McPhail contends the trial court correctly ruled that his additional facts (Nos. 49-72) were uncontradicted.  He claims those facts support all the elements of a negligence cause of action.

A separate statement of facts identifies facts that are contested or uncontested.  (*Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 902.)  It is "an indispensable part of the summary judgment or adjudication process."  (*Ibid*.)  Such statements " 'afford due process to opposing parties' " and " 'permit trial courts to expeditiously review complex motions for . . . summary judgment to determine quickly and efficiently whether material facts are disputed.' "  (*Ibid*.)  "The separate statement is required . . . on the part of each party . . . ."  (*Ibid*.)  Where a party presents additional evidence and the adverse party does not respond, the court may treat that evidence as uncontradicted or "true."  (*Keniston v. American Nat. Ins. Co.* (1973) 31 Cal.App.3d 803, 813.)

" ' "To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that [he] breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' " ' "  (*Doe v. Lawndale Elementary School Dist*. (2021) 72 Cal.App.5th 113, 125.)

Facts 49 to 72 show Mackey breached a duty to McPhail by not inspecting the "TIG Welder to see what type of phase the machine was."  (Fact No. 63.)  The machine's "markings" and "owner's manual" show it was a single-phase machine.  (Fact No. 63.)  Mackey should "have installed the wiring . . . going into the

9.

building as a single-phase" and should "have installed a single-phase receptacle." (Fact No. 63.) He improperly "wired the building as three-phase." (Fact No. 71.) "It is dangerous to connect a single-phase machine to a three-phase receptacle." (Fact No. 62.) A school district employee improperly put "a three-phase plug onto the end of the cord of the single-phase welding machine." (Fact No. 64.) Because Mackey did not install single-phase wiring, when plugged into the receptacle, the "welding machine became electrified." (Fact No. 65.) When McPhail made contact with it, "he received an electrical injury" (Fact No. 66), "caused by" Mackey's "negligent electrical wiring." (Fact No. 70.) McPhail was "severely injured." (Fact No. 69.)

Mackey filed a brief in response. But because he did not file *a separate statement of facts* to respond to McPhail's separate statement of additional evidence, the trial court ruled, "Plaintiffs' Additional Material Facts . . . Nos. 49 through 72 are . . . undisputed." (*Keniston v. American Nat. Ins. Co.*, *supra*, 31 Cal.App.3d at p. 813.)

McPhail's additional facts support the elements of his negligence cause of action by showing breach of duty, causation, and damages. (*Doe v. Lawndale Elementary School Dist.*, *supra*, 72 Cal.App.5th at p. 125; see also *Anderson v. City of Thousand Oaks* (1976) 65 Cal.App.3d 82, 87; *Monroe v. San Joaquin Light & Power Corp.*, *supra*, 42 Cal.App.2d at p. 647.) Nicholas showed that had Mackey not failed to comply with his duty to inspect the machine, he would have seen the "dangerous set-up" of a single-phase machine with a three-phase plug and he could have taken action to comply with his duty to prevent McPhail's reasonably foreseeable injuries. (*Monroe*, at p. 647.)

*Objections to Nicholas's Declaration*

The trial court overruled Mackey's objections to Nicholas's declaration. Mackey has not shown an abuse of discretion. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) The objections involved whether Nicholas could opine about whether Newell would be able to understand Mackey's electrical work. The trial court could reasonably infer that because Nicholas was an expert he could determine that Newell, who was not an electrician, would not be able to determine whether Mackey's electrical work met the required standard. (*Poggetto v. Owen* (1960) 187 Cal.App.2d 128, 136.) Moreover, Newell admitted that any defects in Mackey's work would be latent. We have reviewed Mackey's other objections to McPhail's evidence and we conclude the trial court did not abuse its discretion in overruling them.

*Additional Contested Facts as Triable Issues*

Experts Luxa and Nicholas disagreed about what Mackey should have known when he was performing his work, the scope of his work, the extent of his duties, and whether he was negligent. But the " 'trial court's gatekeeping role does not involve choosing between competing expert opinions.' " (*Garner v. BNSF Railway Co.* (2024) 98 Cal.App.5th 660, 675-676.) The issue of whether the standard of care was breached "is one of fact." (*Hernandez v. KWPH Enterprises* (2004) 116 Cal.App.4th 170, 175.) Summary judgment is not appropriate where there are "dueling expert opinions" creating a factual dispute. (*Id.* at p. 176.) Disputes regarding the facts experts rely on and expert credibility "are matters for the trier of fact to resolve at trial." (*Brancati v. Cachuma Village, LLC* (2023) 96 Cal.App.5th 499, 514.)

There is conflicting evidence about when the welding machine was in the shop, whether it was available to be inspected by Mackey, and whether Mackey had a duty to find out the machine's "phase" even if it was not in the shop. Mackey claimed his "work was performed pursuant to the instructions of Damiani" who monitored his work. But when deposed, he could not remember what Damiani told him, and Damiani's testimony does not support Mackey's claim. There is contested evidence about who approved Mackey's work. There are contested evidentiary issues involving the weighing of Mackey's alleged negligence with the negligence of the school employee who put a three-phase plug on the single-phase machine. (*Hoyem v. Manhattan Beach City School Dist.* (1978) 22 Cal.3d 508, 520; *Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 187 [if a defendant's negligence "was a substantial factor in causing the plaintiff's harm," the defendant "cannot avoid responsibility just because some other person" was also a substantial factor in causing the plaintiff's harm].)

It is improper to resolve these contested evidentiary issues in deciding a summary judgment motion. (*Anderson v. City of Thousand Oaks*, *supra*, 65 Cal.App.3d at p. 87.) Because there are triable issues of fact, the trial court erred by granting summary judgment.

DISPOSITION

The judgment following the order granting a summary judgment motion is reversed.  Costs on appeal are awarded in favor of appellant.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


YEGAN, J.


CODY, J.

13.

Randy Rhodes, Judge

Superior Court County of Ventura

_____

The Medler Law Firm APC and John F. Medler, Jr. for Plaintiff and Appellant.

Veatch Carlson, LLP, Arnold S. Levine and Robert T. Mackey for Defendant and Respondent.