Filed 9/18/25  Henry v. Aleksic CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| KIMBERLY HENRY, | |
| Plaintiff and Appellant, | E084646 |
| v. | (Super.Ct.No. CVRI2302746) |
| SAM SINISA ALEKSIC, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Christoper B. Harmon, Judge.  Affirmed.

Johnson & Shinton and Thomas E. Shinton for Plaintiff and Appellant.

Stream Kim Hicks Wrage & Alfaro, Eugene Kim, and Elizabeth V. Duran, for Defendant and Respondent.

1

Kimberly Henry brought this lawsuit against the drafter of her father's trust amendment, Sam Sinisa Aleksic. The trust amendment disinherited Kimberly and made her son the sole beneficiary of her father's estate.[1] Kimberly's operative first amended complaint (FAC) alleges causes of action against Aleksic for negligence, intentional infliction of emotional distress, and intentional interference with expected inheritance. The trial court sustained Aleksic's demurrer without leave to amend and entered judgment in his favor. We affirm.

BACKGROUND

I.      *Allegations of the FAC*[2]

Jerry and Denise Henry were Kimberly's parents. Denise died in April 2019, and Jerry died in May 2020. Both of them created revocable living trusts in 1999 and amended their trusts several times. In 2010, Denise was diagnosed with cancer, and Kimberly became her caregiver. Jerry and Denise amended their trusts in 2010 to make Kimberly the sole beneficiary of the trusts and their successor trustee.

---

[1]      Because Kimberly and her parents have the same last name, we refer to them by their first names to avoid confusion. No disrespect is intended.

[2]      Kimberly's FAC includes a number of exhibits and incorporates them by reference. At the demurrer stage, we assume the truth of the FAC's allegations and the facts reflected in the exhibits to the FAC. (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209 (*Brown*); *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767 (*Brakke*).)

One of the exhibits is the reporter's transcript of Aleksic's testimony in a related case. In that case, Kimberly asserted a claim for promissory estoppel, alleging that her father breached an oral promise to leave his entire estate to her. We recently affirmed the judgment for the defendants in that case. (*Henry v. Aleksic* (Apr. 2, 2025, E081697) [nonpub. opn.].)

2

Aleksic is not an attorney, but he was Jerry's tax preparer and began doing Jerry's taxes in 2010. Aleksic's business cards and website advertise his ability to prepare living trusts. Around November 2017, Jerry or Denise scheduled an appointment with Aleksic, and Aleksic met them at their home. They told Aleksic that they wanted to remove Kimberly as the beneficiary of Jerry's trust and designate Aleksic as the successor trustee. (Jerry and Denise were co-trustees of the trust.) They also said that they wanted Dylan Heredia-Tamayo (their grandson and Kimberly's son) to be the sole beneficiary of the trust. Jerry and Denise told Aleksic that they were unhappy with Kimberly and that there was "a lot of tension" in their shared home. Aleksic suggested that they specifically disinherit Kimberly by name.

Aleksic prepared the trust amendment disinheriting Kimberly, naming Heredia-Tamayo as the sole beneficiary, and designating Aleksic as successor trustee. Jerry and Denise signed the amendment in February 2018 at a skilled nursing facility, where they were patients. Aleksic was "not trained to look for issues like capacity," and he allegedly exerted undue influence over Jerry and Denise. There is ongoing probate court litigation to determine the validity of the trust amendments; Kimberly contends that the 2010 amendment is controlling, but Aleksic contends that the 2018 amendment is valid and controlling. Because of Aleksic's actions, Kimberly is engaged in multistate litigation and has suffered emotional breakdowns and panic and anxiety attacks.

On the basis of the foregoing allegations, the FAC alleges causes of action against Aleksic for negligence, intentional infliction of emotional distress, and intentional interference with expected inheritance.

II.    *Aleksic's demurrer*

Aleksic demurred to the FAC and filed a request for judicial notice. He asked the court to take judicial notice of certain filings in related cases, including Kimberly's probate petition to determine the validity of the 2018 trust amendment. In her petition, Kimberly asked the probate court to declare the 2018 amendment invalid because of lack of capacity and undue influence by Aleksic.

The trial court issued a tentative ruling sustaining Aleksic's demurrer without leave to amend. The tentative ruling also granted the request for judicial notice. With respect to the negligence cause of action, Kimberly relied on *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*) to argue that Aleksic owed her a duty to (1) not advertise that he was able to practice law and (2) not draft trust documents. The court concluded that *Biakanja* was distinguishable and did not give rise to a legal duty in this case. Moreover, the FAC did not sufficiently allege other essential elements of the cause of action, namely, breach of duty and causation. The court further concluded that the cause of action for intentional infliction of emotional distress failed because Kimberly did not allege extreme or outrageous conduct. In addition, Aleksic's alleged conduct was not directed at her and did not occur in her presence. As to the cause of action for intentional interference with expected inheritance, the court concluded that it failed because

4

Kimberly had an adequate remedy in probate. The FAC alleges that there is ongoing probate litigation to determine the validity of the 2018 trust amendment, and the exhibits to the request for judicial notice showed that Kimberly had filed pleadings in the probate actions contesting the validity of the amendment.

In August 2024, the court adopted its tentative ruling, sustained the demurrer without leave to amend, and entered judgment for Aleksic.

## STANDARD OF REVIEW

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) "[W]e accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346.) We also accept as true facts reflected in exhibits attached to the complaint (*Brakke*, *supra*, 213 Cal.App.4th at p. 767), and we "'consider matters which may be judicially noticed'" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318).

## DISCUSSION

Kimberly argues that the trial court erred by sustaining the demurrer to all three causes of action. The arguments lack merit.

I. *Negligence*

"Recovery for negligence depends as a threshold matter on the existence of a legal duty of care." (*Brown*, *supra*, 11 Cal.5th at p. 213.) "Whether a duty exists is a question

of law to be resolved by the court." (*Ibid.*) Subdivision (a) of Civil Code section 1714 "'establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others.'" (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1142.) "[I]n cases involving traditionally compensable forms of injury—like physical harm to person or property—we presume the defendant owed the plaintiff a duty of care and then ask whether the circumstances 'justify a departure' from that usual presumption." (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 398.)

But in cases involving purely economic harm, there generally is no liability in negligence. (*Southern California Gas Leak Cases*, *supra*, 7 Cal.5th at p. 400.) There is an exception to the "general rule of no recovery for negligently inflicted purely economic losses" if "the plaintiff and the defendant have a 'special relationship'" that gives rise to a duty of care. (*Ibid.*) The special relationship arises if "the plaintiff [is] an intended beneficiary of a particular transaction but was harmed by the defendant's negligence in carrying it out." (*Ibid.*)

*Biakanja* is an economic loss case in which our Supreme Court recognized a special relationship giving rise to a duty of care. (*Southern California Gas Leak Cases*, *supra*, 7 Cal.5th at p. 400.) A notary public prepared the decedent's will but failed to have the will properly attested, so the intended beneficiary received only one-eighth of the estate by intestate succession. (*Biakanja*, *supra*, 49 Cal.2d at p. 648.) She would have received the entire estate under the terms of the will. (*Ibid.*) The *Biakanja* court "held that the intended beneficiary of [the] will could recover for assets she would have

6

received if the notary had not been negligent in preparing the document. [Citation.] A special relationship existed between the intended beneficiary and the notary . . . because 'the "end and aim" of the transaction' between the nonparty decedent and the notary was to ensure that the decedent's estate passed to the intended beneficiary." (*Southern California Gas Leak Cases*, at p. 400.)

In addition to "the extent to which the transaction was intended to affect the plaintiff," *Biakanja*'s duty analysis considered five other factors: (1) "the foreseeability of harm to" the plaintiff, (2) "the degree of certainty that the plaintiff suffered injury," (3) "the closeness of the connection between the defendant's conduct and the injury suffered," (4) "the moral blame attached to the defendant's conduct," and (5) "the policy of preventing future harm." (*Biakanja*, *supra*, 49 Cal.2d at p. 650.) The first three of those factors also weighed in favor of imposing a duty of care. The harm to the intended beneficiary was foreseeable and certain, because the notary "must have been aware from the terms of the will itself that, if faulty solemnization caused the will to be invalid, plaintiff would suffer the very loss which occurred." (*Ibid.*) Moreover, there was a close connection between the notary's conduct and the injury to the intended beneficiary. The intended beneficiary would have received all of the decedent's estate but for the notary's alleged negligence. (*Id.* at pp. 650-651.)

Kimberly argues that the court "applied *Biakanja* too narrowly," but the court correctly concluded that Aleksic owed her no duty of care. (Capitalization and boldface omitted.) Kimberly was not the intended beneficiary of the transaction that Aleksic was

7

tasked with carrying out. Heredia-Tamayo was the intended beneficiary of the transaction, and Jerry and Denise intended to disinherit Kimberly. That particular factor—that the plaintiff was the intended beneficiary of the defendant's conduct—was central to *Biakanja*'s recognition of a special relationship giving rise to a duty of care. (*Southern California Gas Leak Cases*, *supra*, 7 Cal.5th at p. 400; *Biakanja*, *supra*, 49 Cal.2d at p. 650.) *Biakanja*'s analysis of the remaining factors rested on the plaintiff's status as the intended beneficiary and the fact that she did not inherit as intended. This case is not analogous. If Aleksic did faulty work and rendered the 2018 trust amendment invalid, then there would be no harm to Kimberly. On the contrary, Kimberly would benefit. Her parents' attempt to disinherit her and name Aleksic successor trustee would be ineffective, which is the same relief she is seeking in the probate court.

Moreover, the court correctly determined that the FAC does not sufficiently allege causation. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477 [negligence plaintiff must show that the defendant's acts were a legal cause of the plaintiff's injuries].) To show actual or legal causation, the defendant's conduct must be a substantial factor in causing the plaintiff's injury. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 778.) "[C]onduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." (*Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 187.) Kimberly's claimed injury is that her parents removed her as successor trustee and disinherited her. Aleksic's drafting of the trust amendment was not the legal cause of that injury. Aleksic was merely following the instructions of Kimberly's parents, who wished

8

to make those changes to Jerry's trust.  If Aleksic had not prepared the 2018 trust amendment, then Jerry and Denise would have found someone else to prepare it.  Kimberly's claimed injury would have occurred even without Aleksic's conduct.

For all of these reasons, the court did not err by sustaining the demurrer to the negligence cause of action.

II.     *Intentional infliction of emotional distress*

To prevail on a cause of action for intentional infliction of emotional distress, the plaintiff must show "'extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress.'"  (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 86.)  Conduct is extreme and outrageous if it "'exceed[s] all bounds of that usually tolerated in a civilized community.'"  (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903; accord, *Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496 ["'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'"].)  "Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous."  (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 534.)

The court did not err by concluding that the FAC fails to allege extreme and outrageous conduct. Kimberly argues that Aleksic acted outrageously by practicing law, suggesting that Jerry and Denise specifically disinherit Kimberly, drafting documents that named himself as successor trustee, and having Jerry and Denise execute the documents in a skilled nursing facility. None of that conduct could reasonably be found to be so extreme and outrageous that it exceeds all possible bounds of decency in a civilized society. Again, Aleksic acted pursuant to the instructions of Jerry and Denise. There was nothing inherently unlawful about their desire to disinherit Kimberly and name Aleksic successor trustee. They contacted Aleksic to make changes to the trust, met with him at their home, and told him what they wanted. He suggested that they disinherit Kimberly by name as a way of implementing their desired changes. And even assuming that Aleksic's actions constituted the unlicensed practice of law, that is not the sort of atrocious and indecent conduct necessary to support the cause of action. (See *Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 746 [attorneys' alleged violation of the Rules of Professional Conduct was not outrageous conduct for purposes of intentional infliction of emotional distress].)

Because the FAC does not allege outrageous and extreme conduct, the court properly sustained the demurrer to the cause of action for intentional infliction of emotional distress.

10

III.    *Intentional interference with expected inheritance*

"The tort of intentional interference with expected inheritance was first recognized in California in 2012." (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1025.)  But the cause of action is available only if the plaintiff has no adequate remedy in probate. (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1056, 1058.)  "'"[D]ual litigation tracks for disgruntled heirs . . . would risk destabilizing the law of probate and creating uncertainty and inconsistency in its place."'"  (*Id.* at p. 1052.)

An individual who alleges an interest in a trust "because the amendments purporting to disinherit them are invalid" has standing to petition the probate court. (*Barefoot v. Jennings* (2020) 8 Cal.5th 822, 828.)  In addition, the "claims that trust provisions or amendments are the product of incompetence, undue influence, or fraud . . . should be decided by the probate court, if the invalidity of those provisions or amendments would render the challenger a beneficiary of the trust."  (*Ibid.*)

The court correctly determined that Kimberly has no cause of action for intentional interference with expected inheritance.  She has an adequate remedy for her allegedly improper disinheritance in probate court.  Indeed, the FAC alleges that there is ongoing probate court litigation to determine the validity of the 2018 trust amendment, and the court in this case took judicial notice of pleadings in the probate court that confirm Kimberly is pursuing that remedy.  (See *Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, 192 [court properly took judicial notice of other actions filed by the

11

plaintiff in ruling on a demurrer].)  The court therefore did not err by sustaining the demurrer to this cause of action.

## DISPOSITION

The judgment is affirmed.  Aleksic shall recover his costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.

12